MERRIMACK MUTUAL FIRE INSURANCE COMPANY *vs.* PAUL
SAMPSON & another;[1] PATRICK TROY, intervener.

No. 88-P-1366.

Essex. December 15, 1989. - March 12, 1990.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Insurance*, Homeowners' insurance, Insurer's obligation to defend, Con-
struction of policy. *Negligence*, Serving alcoholic liquors to guest. *Alco-
holic Liquors*, Liability of host, Motor vehicle.

A motor vehicle exclusion clause in a policy of homeowners' insurance op-
erated to exclude coverage for an injured person's claims made against
the insureds who were the owners of the motor vehicle involved, based
on theories that one of the insureds negligently supervised a party and
that he was a negligent social host. [356-358]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 23, 1987.

The case was heard by *Robert W. Banks*, J., on a motion
for summary judgment.

*John T. Lamond* for Patrick Troy.

*Allen N. David* (*Harvey Weiner* with him) for the
plaintiff.

DREBEN, J. This is another case which raises the scope of
an insurer's obligation to defend its insureds under a home-
owners' policy containing an automobile exclusion similar to
the exclusions construed in *Barnstable County Mut. Fire Ins.
Co.* v. *Lally*, 374 Mass. 602 (1978), and in *Worcester Mut.
Ins. Co.* v. *Marnell*, 398 Mass. 240 (1986). Merrimack Mu-
tual Fire Insurance Company (Company) successfully sought
a declaration from a Superior Court judge that the automo-
bile exclusion in the policy of its insureds, Paul and Susan
Sampson, made it unnecessary for the Company to defend

---

[1]Susan Sampson.

them against claims brought by Patrick Troy, the intervener in this action. Troy appeals from the summary judgment in favor of the Company. We affirm the judgment.

The extent of the insurer's duty to defend "is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984).

We turn to the two counts of the underlying complaint relied on by Troy to sustain his claim that the Sampsons are covered by the homeowners' policy issued by the Company. One is based on the theory that Paul Sampson was negligent as a social host, see *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986), and the other that he negligently supervised his guests,[2] see *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. at 245-246.

The facts alleged to support the social host theory were as follows. On June 2, 1985, Troy was injured while a passenger in a motor vehicle owned by Paul and Susan Sampson and operated by James M. Lapham.[3] Prior to the accident, Paul Sampson (Sampson) had entertained a number of guests at his home, including James Lapham. Sampson permitted Lapham to drink alcohol when he knew or should have known that Lapham was intoxicated and would subsequently drive a motor vehicle. Because of Sampson's actions, Lapham, while intoxicated, negligently operated a motor vehicle and caused Troy's injuries.

In the negligent supervision count, Troy claimed, in so far as here relevant, that Sampson knew or should have known

[2]Troy concedes that, because of the automobile exclusion, the Company has no duty to defend the Sampsons against the other claims stated in his complaint.

[3]This allegation, the complaint states, applies to all counts. We agree with the motion judge that in view of Troy's complaint, there being nothing to indicate the contrary, Troy may not claim that there is a genuine dispute as to the ownership of the vehicle. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

that Lapham was a drunkard and a person known to have been intoxicated within the six months last preceding the party and that, despite such knowledge, Sampson allowed Lapham to consume alcoholic beverages and to become intoxicated. As a result of Sampson's negligent supervision of the party and his negligent failure to prevent Lapham from becoming intoxicated,[4] Lapham operated the motor vehicle in an intoxicated state and negligently caused Troy to be injured.

At the time of the accident, the Sampsons possessed a homeowners' insurance policy issued by the Company which included coverage for personal liability (Coverage E)[5] and medical payments to others (Coverage F).[6]

The policy provided, in relevant part:

> "*Coverage E - Personal Liability*
> "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
> "1. pay up to the limit of liability for the damages for which the insured is legally liable; and
> "2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . ."

Coverage F provided for medical payments to persons, other than an insured or a regular resident of the household, for bodily injuries caused by the activities of an insured away from the insured location.

The motor vehicle exclusion clause provided that coverages E and F "do not apply to bodily injury or property damage:
. . . .
"e. arising out of:

---

[4]It was also alleged that Sampson was negligent in permitting Lapham, knowing him to be intoxicated, to drive the vehicle.

[5]Up to a limit of $100,000 per occurrence.

[6]Up to a limit of $1,000 per person.

(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an *insured*;

(2) the entrustment by an *insured* of a motor vehicle . . . to any person; . . . [emphases original]."

Troy argues that since the two theories of Sampson's negligence (as a social host and as a supervisor of a party held in his home) are "non-vehicle related" and are independent of his separate vehicle-related activities, Sampson is covered by his homeowners' policy in an action alleging those non-vehicle related activities. In support of his argument, Troy points to *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. at 245, where the Supreme Judicial Court stated: "[N]egligent supervision, unlike negligent entrustment, is a theory of recovery that is separate and distinct from the use or operation of an automobile." In *Marnell* the parents, who neither owned nor operated the vehicle involved in the accident, were held entitled to be defended by their insurer under their homeowners' policy despite the automobile exclusion. Just as the parents in *Marnell* could "reasonably expect to be protected by their homeowners' policy" in an action based on negligent supervision taking place in the home, *id.* at 246, so, Troy argues, could the Sampsons reasonably have the same expectations with respect to the two claims made by him.

Troy, in our view, misses the thrust of the *Marnell* case. There, Michael Marnell was the owner and operator of the vehicle which had caused the plaintiff's injuries. The underlying tort action, however, was brought against his parents based on their alleged negligent supervision of a party in their home.

Since Michael, a member of the household, was an unnamed insured, the carrier of the homeowners' policy in *Marnell* argued that there was no coverage because of the automobile exclusion.[7] The exclusion, according to the in-

___

[7]That exclusion, in language very similar to the Sampsons' policy, provided that coverage under the policy does not "apply to bodily injury or

surer, precluded *every* insured under the policy from obtaining coverage with respect to bodily injuries arising out of the automobile accident.

The Supreme Judicial Court, relying on the severability provision of the policy,[8] rejected the insurer's contention. It agreed that, without that provision, "a literal reading of the motor vehicle exclusion by itself precludes the Marnells [parents] from coverage under the policy because Michael Marnell [son], an insured, owned and operated the motor vehicle involved in the . . . accident." *Id.* at 244. The severability clause, however, made coverage available to the parents. Recognizing that its construction of the automobile exclusion (note 7, *supra*) made the word "any" in that clause superfluous, the court held that a reasonable meaning is given to both clauses by interpreting the term "insured" in the automobile exclusion as referring *only* to the person claiming coverage under the policy. Id. at 244.[9]

In *Marnell*, as indicated previously, the persons claiming coverage were the parents of the person owning and operating the vehicle. The court explained:

> "Under our construction of the policy, the motor vehicle exclusion prevents the homeowners' policy from providing additional insurance, without a premium, to an insured when a motor vehicle owned or operated by that person is involved in an accident causing bodily injuries or property damage. At the same time, the purpose of the severability of insurance clause is served because coverage is extended to insureds who neither owned nor operated the motor vehicle involved in the accident." *Id.* at 245.

---

property damage . . . arising out of the ownership, maintenance, use, loading or unloading of: . . . (2) a motor vehicle owned or operated by or rented or loaned to any *insured* . . . " (emphasis supplied). *Marnell* at 242.

[8]"This insurance applies separately to each insured. . . ."

[9]Thus, because of the severability clause, the term "any insured" (last phrase in note 7, *supra*) in the automobile exclusion was read as "the insured claiming coverage."

As we read *Marnell*, the owner or operator of a motor vehicle involved in an automobile accident causing bodily injuries or property damage is not entitled to be defended against claims of negligent supervision in the home or against analogous claims, such as social host liability. In contrast, however, the insureds under the homeowners' policy who are *not* the owners or operators of the vehicle involved and against whom such claims are brought do not lose coverage by reason of the automobile exclusion.

Troy argues that this distinction is anomalous because it relieves the insurer "merely because Sampson compounded his original negligence by committing additional vehicle-related acts of negligence excluded from the coverage." The construction of the exclusion provision, however, "effectuates the main manifested design of the parties." *Marnell, supra* at 245. The automobile exclusion was obviously intended to omit from the homeowners' policy coverage which is obtainable under an automobile insurance policy. The homeowner who owns and operates an automobile ordinarily procures automobile insurance and also determines the amount of that coverage. The homeowner can reasonably be expected to rely on that coverage for activities related to the ownership and operation of a motor vehicle unless, as suggested in *Marnell* at 245, a premium is paid for supplemental automobile insurance under the homeowners' policy. In contrast, when the homeowner is subjected to claims as a social host or negligent supervisor for actions of persons operating vehicles owned by others, the homeowner does not usually control the amount of automobile insurance covering the operator or owner of such vehicles.

On the authority of *Marnell*, we agree with the judgment of the Superior Court declaring that the Company was not required to defend the owners of the vehicle in the underlying action brought by Troy.

*Judgment affirmed.*