STEPHEN E. SHAMBAN, trustee,[1] & another[2] *vs.* WORCESTER INSURANCE COMPANY.

No. 97-P-1568.

Norfolk. January 12, 1999. - May 27, 1999.

Present: GREENBERG, KAPLAN, & LENK, JJ.

*Insurance,* Homeowner's insurance, Coverage, Insurer's obligation to defend. *Consumer Protection Act,* Insurance. *Practice, Civil,* Attorney's fees.

An action brought against parents for their alleged negligent supervision of their fifteen year old son's operation of a "dirt bike" stated claims that were within the coverage of their standard homeowners' insurance policy and that did not fall within any exclusionary clause [13-16]; however, in the circumstances, the insurer's failure to defend and failure to seek declaratory relief did not constitute violations of G. L. c. 93A or G. L. c. 176D [16].

Insureds under a homeowners' insurance policy were entitled to reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy. [16]

CIVIL ACTION commenced in the Superior Court Department on July 15, 1996.

The case was heard by *Thomas E. Connolly,* J., on motions for summary judgment.

*Jeffrey C. Coniaris* for the plaintiffs.

*Stephen M.A. Woodworth* (*Peter E. Heppner* with him) for the defendant.

KAPLAN, J. On June 14, 1990, Pedro Flores, Jr., fifteen years of age, was disporting with his model 1987 KX-125 Kawasaki "dirt bike" on the ground of the former municipal dump in Brockton. As he drove down a hill or declivity, he crashed into his riding buddy, Frank Lima, who was below on his three-wheel ATV (all terrain vehicle). Lima suffered severe injuries and permanent physical impairments.

---

[1] Of the bankruptcy estate of Pedro A. Flores, Sr.

[2] Laurie Tavares (formerly Flores).

Lima on June 15, 1992, commenced an action in District Court against Pedro, Jr.'s parents, Pedro Flores, Sr., and Laurie Flores, alleging in general terms that he had been injured through Pedro, Jr.'s negligence and that the defendants were liable therefor because of their negligence in allowing their son to operate the dirt bike without any adult supervision.

The parents were named insureds and the son an unnamed insured in a homeowners' policy of Worcester Insurance Company (Worcester). Accordingly, the parents gave notice of the negligence action to their insurance agent on July 2, 1992. On July 23, 1992, Worcester, by Paula J. Donohue, a claims adjuster, informed the Flores parents that there was no coverage, thus declining to defend the action or to indemnify.

Denied assistance by Worcester, the parents as defendants in the negligence action retained counsel. Counsel carried on for a while but then asked the court for leave to withdraw because the clients lacked funds to continue to support the litigation. Leave was granted and the Flores parents were left to defend pro se. When trial was called, they defaulted. Flores, Sr., apparently was present at the subsequent assessment of damages. It resulted on April 28, 1994, in judgment against the parents in the amount of $422,352.33.

Flores, Sr., filed a petition for relief under Chapter 7 of the Bankruptcy Code and was discharged on May 2, 1996; the chief debt discharged was the negligence judgment. In June, 1996, an attorney representing the Floreses applied to the trustee in bankruptcy and asked the trustee to reopen the proceeding to allow institution of suit against Worcester. The trustee agreed and the bankruptcy judge approved.

The present action is by Laurie Tavares and the trustee, represented by the attorney just mentioned, against Worcester, asserting breach by Worcester of its duties to defend and to indemnify. Further, the action asserts the violation by Worcester of G. L. c. 176D, § 3, and c. 93A, §§ 2, 9, by its engaging in improper business practices described in those statutes. (The avails of any judgment obtained against Worcester in the action will, of course, in substance pass to Frank Lima.)

Upon cross-motions by the parties for summary judgment, a judge of the Superior Court held, with memorandum of decision, in favor of the plaintiffs on the policy, and for the defendant under the statutes. The parties have cross-appealed. Agreeing with the judge, we affirm his decisions.

The suit brought against the Flores parents based on their alleged negligent supervision was within the class of claims covered by general provisions of the policy set out in the margin.[3] The question is whether there is further language, elsewhere in the policy, that serves to exclude the particular action from the class — an issue on which the insurer bears the burden of demonstration. We quote the texts to be discussed:

> "1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage: . . .
>
>> "e. arising out of:
>>
>>> "(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured; . . .
>>>
>>> "This exclusion does not apply to: . . .
>>>
>>> "(2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
>>>
>>> "(a) not owned by an insured; or
>>>
>>> "(b) owned by an insured and on an insured location."
>
> . . .

---

[3] "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

"1. Pay up to our limit of liability for the damages for which the insured is legally liable; and

"2. Provide a defense at our expense by counsel of our choice . . . .

". . .

" 'occurrence' means an accident, . . . which results, during the policy period, in:

"a. bodily injury; or

"b. property damage."

"Severability of Insurance. This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence."

1. In *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240 (1986), a homeowners' policy had the parents as named insureds, and the son as an unnamed insured. The relevant texts of the policy were substantially similar to those in the case here at bar.[4] The underlying negligence action against the parents consisted of a claim of negligent supervision: that they had permitted their son to have a party at their house where, predictably, the son, below the age for legal consumption of alcohol, and his guests intended to drink such beverages and the son would use his car to return guests to their homes. The son drove negligently and struck and killed a person whose administrator brought the action against the parents.

The parents, when sued, notified the insurer and invoked the insurer's duties to defend and indemnify. The insurer followed a self-protective procedure often recommended, see *Medical Malpractice Joint Underwriting Assn. of Mass.* v. *Goldberg*, 425 Mass. 46, 56 & n.25 (1997): it brought a declaratory action, naming the parents and others as defendants, to test whether it was exempt from the claimed duties. As is well understood, this involved matching the allegations of the negligence complaint (liberally construed) with the terms of the policy — did the policy cover or exclude?[5]

The insurer in *Marnell* pointed to exclusion (e)(1). At first sight this might seem applicable, as an insured, the son, owned and operated the motor vehicle involved in the accident. That view, however, would take no account of the severability clause, by which the insurance "applies separately to each insured." The plaintiffs, named insureds, did not own or operate the fatal automobile, and thus were not caught up in exclusion (e)(1).

The court said (398 Mass. at 242, 244-245):

"The resolution of this case depends on an interpretation

---

[4]The present policy has the word "an," in relation to "insured," the *Marnell* policy had "any," but the parties agree there is no difference of meaning.

[5]"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983).

of the motor vehicle exclusion in light of the severability of insurance clause.

"...

"[The administrator] correctly states that this clause requires that each insured be treated as having a separate insurance policy. Thus, the term 'insured' as used in the motor vehicle exclusion refers only to the person claiming coverage under the policy. Since it is undisputed that neither Richard nor Ellen Marnell owned or operated the motor vehicle that struck the intestate, the provision excluding coverage for bodily injury arising out of the insured's ownership or use of a motor vehicle does not preclude Richard and Ellen Marnell from obtaining coverage in connection with the [administrator's] tort action."

The point is elaborated in later authority.[6]

The court having declared in the declaratory action that the insurer had a duty to defend, the insurer proceeded to perform the duty. In the event, the insurer defended successfully in the tort action and preserved its victory on appeal. *Alioto* v. *Marnell*, 402 Mass. 36 (1988).

2. As the judge below recognized, the present case is similar to the *Marnell* case (but the insurer, rather recklessly, as we may suggest, chose to forego the declaratory route).[7] Thus the exclusion (e)(1), which speaks to "motor vehicles" including recreational motor vehicles, read in connection with the severability clause, must be held not to apply.

---

[6] The court in *Ayer* v. *Imperial Cas. & Indem. Co.*, 418 Mass. 71, 73-74 (1994), quotes with approval a passage in *Merrimack Mut. Fire Ins. Co.* v. *Sampson*, 28 Mass. App. Ct. 353, 358 (1990): "[T]he homeowner who owns and operates an automobile ordinarily procures automobile insurance and also determines the amount of that coverage. The homeowner can reasonably be expected to rely on that coverage for activities related to the ownership and operation of a motor vehicle unless . . . a premium is paid for supplemental automobile insurance under the homeowner's policy. In contrast, when the homeowner is subjected to claims as a social host or negligent supervisor for actions of persons operating vehicles owned by others, the homeowner does not usually control the amount of automobile insurance covering the operator or owner of such vehicles."

[7] The more remarkable because the defendant Worcester herein is the successor with a change of name to the plaintiff Worcester Mutual Insurance Company in *Marnell*.

The policy goes further and by means of the provision (2)(a), carves out of exclusion (e)(1), a recreational vehicle "not owned by an insured." When this provision is read in relation to the severability clause, the result is fortified that the present parents are entitled to insurance coverage, for they did not own the recreational vehicle involved in the accident.

3. Not surprisingly, Worcester is displeased with the interpretation of policy language in the *Marnell* case. Worcester would like us to say that the policy embodies a motor vehicle exclusion that applies across the board when a named or unnamed insured is sued for his alleged fault in any connection with an accident involving a motor vehicle. This view has been discredited.

(i) Under *Marnell* it makes a difference whether the insured who is sued in the third-party action did or did not own the vehicle involved in the accident. Worcester would simply disregard the meaning ascribed to the severability clause. See *West Am. Ins. Co.* v. *AV & S*, 145 F.3d 1224, 1229 (10th Cir. 1998), but compare *Taryn E.F. by Grunewald* v. *Joshua M.C.*, 178 Wis. 2d 719 (1993).

(ii) Worcester is suggesting that it should not matter that there was negligent parental supervision that allegedly had a causative bearing on the accident; if the injury occurred through the use of a motor vehicle, the insurer's responsibility, according to Worcester, should be excluded. *Marnell, supra* at 245-246, has held against this; the negligent supervision claim is within the general class of claims covered by the policy and no exclusionary clause applies; indeed the clause (2)(a) indicates coverage in this case of a recreational vehicle not owned by the parents.

(iii) The previous point may be put another way. Worcester wants to overlook the court's remarks in *Marnell* that the negligent supervision theory advanced there was "separate and distinct from the use or operation of an automobile" (398 Mass. at 245), and in that sense the (e)(1) exclusion was inapplicable. The court's characterization of the negligent supervision claim is cogent and significant. See *Grinnell Mut. Reinsurance Co.* v. *Employers Mut. Cas. Co.*, 494 N.W.2d 690 (Iowa 1993), but compare *Taylor* v. *American Fire & Cas. Co.*, 925 P.2d 1279 (Utah App. 1996).

If Worcester is suggesting that the parents' negligent supervision in the present case was not "separate and distinct" in any

factual sense, we have to say the facts have not been established between the parties to this action about the precise nature of the negligent supervision alleged in general terms in the third-party complaint; and any chance to claim a factitious distinction was lost to the insurer by its own hand when it failed to follow the route to a declaration (and perhaps in the end to a favorable result as in the *Alioto* case). "What is not permitted is that an insurer shall escape its duty to defend the insured against a liability arising on the face of the complaint and policy, by dint of its own assertion that there is no coverage in fact: the insurer then stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 324 (1983).

We add that in the interpretive aspects of this case the insurer has to contend with the rule that exclusionary policy terms are to be strictly construed against the insurer, and the further rule that doubts created by any terms in a policy that may be considered ambiguous are to be resolved against the insurer. See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 322 (1995); *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 324 (1991).[8]

*Consumer protection statutes.* The majority of the panel are not disposed to overrule the judge's holding for the insurer on this phase. The insurer's handling of the parents' claim was offhand, not studied as it should have been in the light of the decisional law, but the judge could well rule that the mistake was not such as to justify the enhanced statutory damages.

*Attorney's fees.* Under the rule of *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 98 (1997), further explicated in *Rubenstein* v. *Royal Ins. Co. of America*, 429 Mass. 355 (1999), the plaintiffs are entitled to recover attorney's fees and expenses incurred by them in their conduct of the present action.

The judgments appealed from are affirmed and the case is remanded to the Superior Court for assessment of the plaintiffs' attorney's fees and expenses as indicated in the opinion.

*So ordered.*

---

[8]Worcester's defenses of laches and failure of Laurie Tavares to give notice were without merit and the judge so held.