**Kenneth MCCONNELL and Sharon Quinonez, Plaintiffs,**

v.

**SCOTTSDALE INSURANCE COMPANY Defendant.**

**No. 01–CV–11807–MEL.**

United States District Court, D. Massachusetts.

May 31, 2002.

Edward J. Kelly, Kelly & Kelly, Quincy, MA, Leo McAuliffe, Wollaston, MA, for Plaintiffs.

Steven P. Perlmutter, Mary L. Cataudella, Robinson & Cole, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

The plaintiffs in this reach and apply case, Sharon Quinonez and Kenneth McConnell, seek to satisfy two judgments entered in state court against Guard Force Management, Inc. (Guard Force), and defendant Scottsdale Insurance Company (Scottsdale), the insurer. Both judgments arose out of the conduct of Thomas Dooling, a Guard Force employee. Scottsdale moves for summary judgment on the grounds that its insurance policy issued to Guard Force expressly excludes coverage for the causes of actions alleged by the plaintiffs in their suits against Guard Force. For the reasons explained below, the motion is granted in part and denied in part.[1]

### I.

Dooling applied for employment with Guard Force on November 20, 1993 and was hired on December 2, 1993. Dooling was assigned as a security guard at O'Brien Towers, a residence for the elder-

---

1. Scottsdale has also moved to strike paragraph thirteen of Daniel Reale's affidavit submitted as an exhibit to the plaintiffs' opposition to the motion for summary judgment. It is unnecessary to reach the question of whether the statement constitutes admissible evidence as an exception to the hearsay rule, since the statement was not considered in the disposition of this motion.

ly and disabled, operated by the Quincy Housing Authority. According to the plaintiffs, residents of O'Brien Towers observed Dooling drinking on the job, found him harassing an elderly female tenant, received threats from him in the recreation room, and witnessed him wearing brass knuckles. The plaintiffs also offer evidence showing that on several occasions at least one resident, if not more, reported Dooling's misconduct to Guard Force in mid-December 1993.

Although it is not clear why, Guard Force mailed a request for Dooling's criminal record to the Criminal History Systems Board on December 21, 1993. The plaintiffs infer that Guard Force made this request after receiving the residents' complaints about Dooling's behavior. Be that as it may, Dooling remained on the job, and before Guard Force received the information about Dooling's criminal record, Dooling assaulted McConnell in the lobby of the O'Brien Towers, and assaulted and battered Quinonez in her home. On November 7, 1995, Dooling was convicted of assault and battery as a result of his attacks on or about January 11, 1994, against McConnell and Quinonez. He received a five-year sentence for the indecent assault and battery of Quinonez and a suspended sentence of two and one-half years of probation for the assault and battery of McConnell.

Both plaintiffs brought suit against Guard Force. McConnell sued Guard Force for vicarious liability, negligent hiring, training, retention, supervision, and use of a defective instrumentality. Quinonez sued Guard Force for vicarious liability, negligent hiring, training, retention, and supervision, and negligent instrumentality. Subsequently, a default was entered against Guard Force in both lawsuits, and at a damages hearing on May 24, 2001, McConnell was awarded $40,000,

and Quinonez was awarded $300,000. Later, on June 26, 2001, writs of execution against Guard Force were issued for $73,666.95 in McConnell's case and for $504,777.50 in Quinonez's case.

Scottsdale issued commercial liability insurance to Guard Force for the period of April 18, 1993 to April 18, 1994. The policy provides coverage for bodily injury damages resulting from an occurrence during the policy period. The policy provision in dispute is the Detective or Patrol Agency Endorsement that limits coverage provided in the policy:

> In addition to those exclusions already found in the coverage form, this insurance does not apply to any dishonest, fraudulent, criminal or malicious act or omission of yours, any partner or employee or to any allegations against you that such loss arose out of your failure to properly hire, train, or supervise any employee.

(Ex. D). The plaintiffs concede that they cannot recover the judgments under claims of negligent hiring or negligent supervision of Dooling. However, they assert that their claims are not for negligent hiring or supervision but rather for Guard Force's *negligent retention* of Dooling's services (and for negligent use of an instrumentality) which are distinct torts, not included in the exclusion clause, and therefore covered under the insurance policy.

## II.

■ Scottsdale contends that under the express language of the policy it is not obligated to indemnify Guard Force for any vicarious liability for Dooling's criminal acts or for "any allegations against [Guard Force] that [a] loss arose out of [Guard Force's] failure to properly hire, train, or supervise any employee." (Ex. D). According to Scottsdale, though not explicitly excluded from coverage, the

plaintiffs' claims for negligent use of an instrumentality and negligent retention likewise must be excluded because the plaintiffs' alleged damages "arose out of" torts that are definitely not covered—Guard Force's negligent hiring, training and/or supervision of Dooling.

To bolster its construction of the terms of the policy, Scottsdale relies on the Supreme Judicial Court's holding in *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457, 720 N.E.2d 813, 816 (1999), which held in pertinent part:

> cases interpreting the phrase "arising out of" in insurance exclusionary provisions suggest a causation more analogous to "but for" causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit in the absence of the objectionable underlying conduct.

Thus, Scottsdale contends that the plaintiffs' current claims of negligent retention and negligent use of an instrumentality "arise out of" Guard Force's allegedly negligent hiring, training, and/or supervision of Dooling, or put differently, "but for" Guard Force's alleged negligence in hiring Dooling, he would not have been working at the O'Brien Towers as a security guard.

Scottsdale stresses that interpreting the policy to permit coverage for Guard Force's "retention" where the policy clearly excludes hiring, training, and supervision distorts the plain meaning of the clause and alters the parties' reasonable expectations. *See New England Mut. Life Ins. Co. v. Liberty Mutual Ins. Co.*, 40 Mass.App.Ct. 722, 724, 667 N.E.2d 295, 297 (1996) (holding that the usual meaning ascribed to the phrase "arising out of" in an insurance policy exclusion clause is much broader than "caused by" and is considered synonymous with "originate" or "come into being").

In conclusion, Scottsdale asserts that since the plaintiffs' claims are not covered by the insurance policy, the plaintiffs cannot reach and apply the insurance proceeds. Moreover, Scottsdale moves for summary judgment on the plaintiffs' claims for violation of M.G.L. chs. 93A and 176D on the grounds that it has rightfully declined coverage.

### III.

■ The plaintiffs commence their argument by reminding us of the strong policy that exclusions from coverage are strictly construed against the insurer. *See, e.g., Shamban v. Worcester Insur. Co.*, 47 Mass.App.Ct. 10, 16, 710 N.E.2d 627, 631 (1999) ("exclusionary policy terms are to be strictly construed against the insurer, and . . . doubts created by any terms in a policy that may be considered ambiguous are to be solved against the insurer"). Moreover, the plaintiffs note that Scottsdale, as the drafter of the policy and the party with greater bargaining power, has the burden to prove that the claims are not covered. According to the plaintiffs, Scottsdale has not met this burden.

The plaintiffs characterize Scottsdale's reliance on *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457, 720 N.E.2d 813, 816 (1999), for the proposition that Massachusetts courts interpret the phrase "arising out of" broadly as exaggerated. *Bagley* involved a policy that excluded all claims arising wholly or in part out of any sexual misconduct, and a plaintiff who sought to satisfy a judgment against a motel where she was raped. The plaintiffs contend that the facts of Bagley were so clear-cut compared to theirs that *Bagley* cannot mark the boundaries of "arising out of" in the instant case.

The plaintiffs underscore that they are not seeking recovery for the torts of negli-

gent hiring or supervision; but rather the distinct tort of negligent retention and negligent use of an instrumentality. They argue that Scottsdale's broad reading of the policy's exclusionary terms cannot be correct; otherwise, a domino effect of causation would render every possible act by a Guard Force employee excluded from insurance coverage. According to the plaintiffs, the evidence establishes that Guard Force had actual notice of Dooling's abusive behavior, such that, Dooling's assaults against McConnell and Quinonez were foreseeable, which by definition renders it liable for negligently retaining him. In spite of this notice, the plaintiffs stress that Guard Force took no immediate action to prevent the foreseeable attacks on the plaintiffs.

### IV.

The Scottsdale policy does not expressly exclude the torts of negligent retention or negligent use of an instrumentality. The question, then, is whether, under Massachusetts law, these torts "arise out of" those enumerated claims specifically excluded by the policy. The tort of negligent retention is in theory and in practice distinct from those claims clearly excluded from insurance coverage in the Endorsement. For example, section 317 of the Restatement (Second) of Torts defines the tort of negligent retention as "retention in employment of servants known to misconduct themselves." And Massachusetts courts have described the tort as:

> when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating discharge or reassignment.

*Foster v. Loft, Inc.*, 26 Mass.App.Ct. 289, 291, 526 N.E.2d 1309, 1311 (1988).

I conclude that a respectable argument can be made that because negligent retention is recognized in law as a tort, distinct from negligent hiring or supervision, and because it is not specifically excluded from coverage, it is covered by the policy. At the very least, the clause is ambiguous as to whether negligent retention is covered and therefore the contract must be construed against the defendant. Accordingly, the motion for summary judgment is denied.

As to the tort of negligent use of an instrumentality, however, the plaintiffs have not offered sufficient facts to distinguish the claim from those expressly excluded from coverage under the policy, nor have they raised a doubt or ambiguity on the subject to overcome summary judgment as to the tort of negligent use of an instrumentality.

### V.

For the reasons above, the insurance policy covers the plaintiffs' claims for negligent retention, if proven at trial. Accordingly, the motion for summary judgment is denied as to the claim for negligent retention and granted as to all remaining claims.

It is so ordered.