## FIRST SPECIALTY INSURANCE CORPORATION *vs.* PILGRIM INSURANCE COMPANY.

No. 12-P-1281.

Suffolk. April 4, 2013. - June 26, 2013.

Present: KANTROWITZ, BROWN, & KAFKER, JJ.

*Insurance,* General liability insurance, Motor vehicle exclusion, Motor vehicle insurance, Insurer's obligation to defend. *Indemnity. Motor Vehicle,* Insurance.

An insurer that issued a commercial general liability insurance policy had no duty to defend and indemnify its insureds for claims of negligent supervision relating to an automobile accident involving an intoxicated employee of the insureds, where the terms of an automobile exclusion clause in the policy applied to both the claims brought against the employee and those brought against the insureds. [815-820]

CIVIL ACTION commenced in the Superior Court Department on March 12, 2010.

The case was heard by *Geraldine S. Hines,* J., on motions for summary judgment.

*David A. White* for the defendant.

*Barbara O'Donnell* for the plaintiff.

KAFKER, J. The instant case involves a dispute between a general liability insurer, First Specialty Insurance Corporation (FSIC), and an automobile insurer, Pilgrim Insurance Company (Pilgrim), regarding the scope of an automobile exclusion in a commercial general liability insurance policy (CGL policy). By its express terms, this "exclusion applies even if the claims against any insured allege negligence . . . in the supervision[] [or] hiring[] . . . of others by that insured, if the 'occurrence' which caused the 'bodily injury'. . . involved the . . . use . . . of any . . . 'auto' . . . owned or operated by . . . any insured." The question presented is whether FSIC had a duty to defend

and indemnify its insureds for negligent supervision claims relating to an automobile accident involving an intoxicated employee of the insureds. Pilgrim, which settled the underlying claims in their entirety, argues that the principles of *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240 (1986) (*Marnell*), and its progeny mandate coverage for all of FSIC's insureds except the intoxicated driver, as they were not the owners or operators of the automobile, and therefore FSIC should reimburse Pilgrim for a portion of the costs incurred in litigating and settling the underlying action. We conclude, however, that because FSIC's policy contains the express terms referenced above that were not present in *Marnell*, a different result is warranted. See *Massachusetts Property Ins. Underwriting Assn.* v. *Berry*, 80 Mass. App. Ct. 598, 602 (2011); Rhoades *vs.* Massachusetts Property Ins. Underwriting Assn., U.S. Dist. Ct., No. 09-11302-DPW (D. Mass. July 13, 2010). We therefore affirm the summary judgment in favor of FSIC.[1]

1. *Background.* a. *Underlying facts.* The facts of the underlying litigation are undisputed in this action. In 2007, Dennis Pinto had been diagnosed with dementia. Pinto's family contracted with R. Squared Enterprises, Inc. (R. Squared), to provide nonmedical support services to Pinto. Starting on October 17, 2007, R. Squared assigned Kimberly Pereira to work with Pinto. The following day, Pereira drove Pinto to a restaurant for lunch in an automobile owned by Pinto's wife. While at the restaurant, Pereira consumed alcohol, allegedly becoming intoxicated, and she thereafter drove negligently. She crashed the automobile into a tree, and Pinto suffered serious injuries. R. Squared had policies in place to require background checks of prospective hires, including their criminal and driving records. Under those policies, Pereira should not have been hired because she previously had been convicted twice of alcohol-related offenses.

Pinto's family sued Pereira, R. Squared, and others associated with R. Squared, eventually naming as defendants R. Squared's

---

[1]In light of the result we reach, we need not address FSIC's alternative argument that it cannot be responsible for equitable contribution in the absence of an apportionment of the settlement paid by Pilgrim among the various claims in the underlying litigation.

principals, Robert and Raquel Mullaney.[2] The claims included negligence against Pereira; liability under respondeat superior for Pereira's negligence against R. Squared and the Mullaneys (collectively, R. Squared defendants); and negligent hiring, training, supervision, or retention against the R. Squared defendants and Sandra Smith. FSIC disclaimed coverage and declined to defend the suit, except that it paid some of Smith's defense costs under a reservation of rights. Pilgrim provided the R. Squared defendants with a defense, and the Pinto suit was settled in April, 2010, within Pilgrim's $1 million policy limit. All claims by the Pintos were dismissed with prejudice in May, 2010. Pilgrim paid the settlement, which was not allocated among the various claims; FSIC did not contribute toward it.

b. *Insurance policies.* At all relevant times, R. Squared was the named insured on a Pilgrim business automobile insurance policy. That policy included coverage for automobiles owned by others. It is undisputed that this policy covered Pereira while using Pinto's wife's automobile. The Pilgrim policy also provided that anyone qualified as an insured if they were "liable for the conduct of [another] 'insured' . . . but only to the extent of that liability." See *Society for Christian Activities, Inc.* v. *Markel Ins. Co.*, 56 Mass. App. Ct. 190, 193 & n.9 (2002), *S.C.*, 440 Mass. 1006 (2003) (dealing with identical language).

R. Squared also held a CGL policy with FSIC. The CGL policy covers liability for bodily injuries to third parties stemming from accidents in general. All of the R. Squared defendants are insureds under the CGL policy. However, the CGL policy also contains an automobile exclusion, of particular relevance here, which is set forth in the margin.[3] The final pertinent provision in the CGL policy is the severability clause,

---

[2]Another corporation and an individual (Sandra Smith, a former employee of R. Squared) were also named as defendants.

[3]The CGL policy's automobile exclusion states that the insurance does not apply to the following:

> " 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading'.

> "This exclusion applies even if the claims against any insured allege

which indicates that the policy applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." See *Society for Christian Activities, Inc.* v. *Markel Ins. Co.*, 56 Mass. App. Ct. at 191-192 (identical language).

c. *The instant action.* In March, 2010, FSIC filed this action against Pilgrim, seeking a judgment declaring that it had no obligation to defend or indemnify the R. Squared defendants, and consequently that Pilgrim had no right to contribution or subrogation from FSIC. Soon after the Pinto suit settled, Pilgrim filed opposing counterclaims for equitable contribution and subrogation. On cross motions for summary judgment, the motion judge ruled in favor of FSIC and entered judgment accordingly.

2. *Discussion.* We review the motion judge's ruling on summary judgment de novo. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). "We ask whether the evidence, in the light most favorable to the party losing the contest of cross motions, and the controlling law entitle the prevailing party to judgment. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66, 70 (2007). As with contracts generally, the interpretation of the unambiguous terms of an insurance policy is a matter of law for the trial court and then the reviewing court. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982); *Clendenning* v. *Worcester Ins. Co.*, 45 Mass. App. Ct. 658, 660 (1998)." *Audubon Hill S. Condominium Assn.* v. *Community Assn. Underwriters of America, Inc.*, 82 Mass. App. Ct. 461, 465 (2012). An ambiguous term in a policy will be construed against the insurer, but "[a] term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning." *Suffolk Constr. Co.* v. *Illinois Union Ins. Co.*, 80 Mass. App. Ct. 90, 94 (2011). See *Shamban* v. *Worcester Ins. Co.*, 47 Mass. App. Ct. 10, 16 (1999) (*Shamban*).

As an insurer's duty to defend is broader than its duty to

negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured."

indemnify, we need only consider whether FSIC was obligated to defend the R. Squared defendants against the Pintos' complaint. See *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 527 (2005). "An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings* v. *Commerce Ins. Co.*, 458 Mass. 194, 200 (2010). In determining the scope of the duty to defend, "[t]he process is not one of looking at the legal theory enunciated by the pleader but of 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.' " *Id.* at 201, quoting from *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 12-13 (1989).

In interpreting FSIC's automobile exclusion, see note 3, *supra*, we do not write on a blank slate. The *Marnell* case construed a homeowner's insurance policy containing an automobile exclusion, not materially different from the first paragraph of FSIC's automobile exclusion, disclaiming coverage if a motor vehicle was owned or operated by "any insured." 398 Mass. at 242. In *Marnell*, the underlying complaint alleged that the parents permitted their son Michael to have a party at their house, knowing that, although he was underage, he would drink alcohol, "that [Michael] left the party in an intoxicated condition, and that, while operating his motor vehicle in a negligent manner, he struck and killed the intestate." *Id.* at 241. The parents were named insureds under the homeowner's policy, and the son was an unnamed insured. *Id.* at 242. The son, not the parents, owned and operated the vehicle. *Ibid.* The essential theory of liability against the parents was negligent supervision of their son. *Id.* at 241.

The *Marnell* court held that "without the severability provision a literal reading of the motor vehicle exclusion by itself precludes the [parents] from coverage under the policy because [the son], an insured, owned and operated the motor vehicle involved in the fatal accident. But the severability of insurance clause makes coverage available to [the parents] nonetheless."

*Id.* at 244. The severability clause, providing that the policy "applies separately to each insured," "require[d] that each insured be treated as having a separate insurance policy. Thus, the term 'insured' as used in the motor vehicle exclusion refers only to the person claiming coverage under the policy." *Ibid.* The result was that, although coverage might be excluded for the son, the exclusion did not apply to his parents because they did not own or operate the vehicle. *Id.* at 244-245. The *Marnell* court recognized that its construction "makes the word 'any' in the motor vehicle exclusion superfluous," but stated that applying the exclusion to the parents "would render the entire severability of insurance clause meaningless." *Id.* at 245. The court emphasized that the alleged negligent supervision took place in the parents' home, and "the manifest design of homeowners' insurance is to protect homeowners from risks associated with the home and activities related to the home." *Ibid.* Moreover, in contrast to negligent entrustment, which is derivative of the operation of a motor vehicle, the negligent supervision cause of action is "separate and distinct from the use or operation of an automobile." *Ibid.* It therefore was reasonable for the parents to expect coverage under their homeowner's policy for that conduct. *Id.* at 245-246.

This court further explained the *Marnell* rule in *Shamban*, 47 Mass. App. Ct. at 13-16. The underlying facts in *Shamban* were that a fifteen year old boy on his dirt bike crashed into a friend, and the friend sued the boy's parents for negligent supervision. *Id.* at 10-11. The same insurer as in *Marnell*, applying much the same policy language, declined to defend based on the motor vehicle exclusion. *Id.* at 11-13 & n.4, 14 n.7. We held that "[u]nder *Marnell* it makes a difference whether the insured who is sued in the third-party action did or did not own the vehicle involved in the accident."[4] *Id.* at 15. We therefore read *Marnell* as having "discredited" the insurer's view that its "motor vehicle

---

[4]Pilgrim reads too much into this statement, asserting that our cases "draw a distinction between negligent supervision claims where the insured owns the vehicle involved in the accident, wherein there is no General Liability coverage, and those where the insured does not own the vehicle, wherein there is General Liability coverage." Even if the cases have tended to follow that factual pattern, they depend on the particular policy language at issue. It does not follow that the exclusion *only* applies to those who own the vehicle

exclusion . . . applies across the board when a named or un-named insured is sued for his alleged fault in any connection with an accident involving a motor vehicle." *Ibid.*

In this case, Pilgrim argues that *Marnell* and *Shamban* mandate coverage for the R. Squared defendants under FSIC's CGL policy. If the automobile exclusion contained only the first paragraph, which is similar to those at issue in *Marnell* and *Shamban*, that might be true. Cf. *Ayer* v. *Imperial Cas. & Indem. Co.*, 418 Mass. 71, 73-74 (1994), quoting from *Merrimack Mut. Fire Ins. Co.* v. *Sampson*, 28 Mass. App. Ct. 353, 358 (1990). However, the exclusion in the FSIC policy, see note 3 *supra*, contains a second paragraph that addresses this precise situation. See Rhoades *vs.* Massachusetts Property Ins. Underwriting Assn., *supra*, slip op. at 10 n.5 (noting that a similar provision "appears . . . designed precisely to exclude coverage for any negligent supervision claims which might be raised under a *Marnell* theory"). That paragraph states that the automobile exclusion "applies even if the claims against *any insured* allege negligence . . . in the supervision[] [or] hiring[] . . . of others *by that insured,*" if the underlying claim involves an automobile "that is owned or operated by . . . *any insured*" (emphasis supplied). In *Marnell*, the court construed a reference to "any insured," in light of the severability clause, to refer only to each insured who was sued. *Marnell*, 398 Mass. at 244-245. However, the policy at issue in *Marnell* did not have this second paragraph. Indeed, the second paragraph appears to be a response to the issues raised in cases like *Marnell*. See Rhoades *vs.* Massachusetts Property Ins. Underwriting Assn., *supra*.

When read carefully, the second paragraph clearly envisions that two different insureds are involved. That paragraph excludes coverage if (1) claims are brought against "any insured" alleg-ing negligent supervision or hiring of others by "that insured," and (2) the occurrence underlying those claims involved an automobile owned or operated by "any insured." If these two clauses of the second paragraph refer to the same person, as Pilgrim would have it, the second paragraph would add nothing to the first, and would make little sense. Under this interpreta-

regardless of the policy language. Cf. *Society for Christian Activities, Inc.* v. *Markel Ins. Co.*, 440 Mass. at 1006.

tion, the second paragraph would exclude only negligent supervision claims against the owner or operator of the automobile, but such claims are already excluded by the first paragraph. See *Merrimack Mut. Fire Ins. Co.* v. *Sampson, supra*; *Phoenix Ins. Co.* v. *Churchwell*, 57 Mass. App. Ct. 612, 614-616 (2003). "An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." *Marnell*, 398 Mass. at 245, quoting from *Sherman* v. *Employers' Liab. Assur. Corp.*, 343 Mass. 354, 357 (1961). The only reasonable construction of this provision is that the first clause of the second paragraph, pursuant to the severability clause and consistent with *Marnell*, requires separate application to each insured, but the second clause refers generally to any insured. Thus, for each defendant in the underlying litigation, we must determine whether, according to the complaint, that defendant negligently hired or supervised another insured person who owned or operated the automobile involved in the occurrence underlying the claim. If so, that claim of negligence is unambiguously excluded from coverage under FSIC's policy. See *Flejter* v. *West Bend Mut. Ins. Co.*, 330 Wis. 2d 721, 727 (Ct. App. 2010) (concluding, on similar facts, that identical CGL policy language "could not be more plain" in excluding negligent supervision claim). Cf. *Stafford* v. *T.H.E. Ins. Co.*, 309 N.J. Super. 97, 104-105 (App. Div. 1998) (construing similar exclusion for negligent hiring or supervision relating to assault and battery).

With this interpretation in mind, we compare the allegations of the complaint with the policy terms. See *Quincy Mut. Fire Ins. Co.* v. *Crispo*, 80 Mass. App. Ct. 484, 488 (2011). The direct claim for negligence against Pereira obviously falls within the automobile exclusion. See *Merrimack Mut. Fire Ins. Co.* v. *Sampson*, 28 Mass. App. Ct. at 358. Any claims seeking to impose vicarious liability on the R. Squared defendants for Pereira's negligence are also excluded, as they are not "separate and distinct from the use or operation of an automobile." *Marnell*, 398 Mass. at 245. See *Society for Christian Activities, Inc.* v. *Markel Ins. Co.*, 440 Mass. at 1006-1007. The remaining claims against the R. Squared defendants, for negligent hiring, negligent supervision, and the like, clearly fall within the second

paragraph of the automobile exclusion as explained above. Because all of the claims in the Pintos' complaint were excluded under FSIC's policy, the motion judge properly ruled that FSIC had no duty to defend (and, a fortiori, no duty to indemnify) the R. Squared defendants.

This result also comports with the allocation of risks and payment of premiums among policies purchased by R. Squared. R. Squared obtained an automobile policy from Pilgrim and a CGL policy from FSIC. The automobile policy was drafted broadly enough to provide that anyone qualified as an insured if they were "liable for the conduct of [another] 'insured.' " The CGL policy, in contrast, contained a broad automobile exclusion. Contrast *Marnell*, 398 Mass. at 242; *Cherokee Ins. Co.* v. *Babin*, 37 So. 3d 45, 49-50 (Miss. 2010) (finding factual issue as to CGL insurer's liability where endorsement removed second paragraph from identical automobile exclusion). The policies thereby complemented each other, and the premiums for each policy reflected the extent of the coverage each provided. R. Squared did not plan or pay for overlapping policies.

To insure itself for injuries arising out of automobile accidents, R. Squared relied on its automobile, not its general liability policy. "Were we to conclude that the [automobile] exclusion did not apply, we would in effect allow the general liability policy to provide additional insurance [for injuries arising out of automobile accidents] without a premium." *Society for Christian Activities, Inc.* v. *Markel Ins. Co.*, 440 Mass. at 1007. Our holding that there was no overlap between the Pintos' claims arising out of the automobile accident and FSIC's coverage therefore comports with the economic decisions made by the insured and "supports the proper allocation of risks between an insured's [general liability] policy and automobile insurance," *Ibid.*, quoting from *Phoenix Ins. Co.* v. *Churchwell*, 57 Mass. App. Ct. at 616 (alteration in original).

3. *Conclusion.* FSIC's policy, unlike those in *Marnell* and *Shamban*, clearly communicated that the types of harm suffered by the Pintos fell outside the scope of its coverage. Indeed, the policy language appears intended to address the interpretive issues raised in those cases. Therefore, FSIC owed no duty to the

R. Squared defendants to defend or indemnify for those claims and, consequently, no duty to Pilgrim.

*Judgment affirmed.*