NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-737

LUIS PEDROSO, trustee,[1]

vs.

HANOVER INSURANCE COMPANY & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This insurance coverage dispute arises out of a tragic accident in which one man was killed and another was injured trying to free a tractor trailer from snow and ice in the rear alley of commercial rental property owned by the plaintiff, Luis Pedroso, as trustee of the LMP Realty Trust (LMP).  LMP was sued in connection with the accident, and it sought a defense and indemnification from the defendants, Hanover Insurance Company (Hanover) and Sentinel Insurance Company, Limited (Sentinel), which insured two of LMP's tenants.  Hanover and Sentinel denied that they had a duty to defend or indemnify LMP, and this lawsuit, in which LMP asserted claims for breach of contract and violation of G. L. c. 93A, followed.  In the Superior Court, a

_____

[1] Of the LMP Realty Trust.
[2] Sentinel Insurance Company, Limited.

judgment on the pleadings entered in LMP's favor on its breach of contract claims.[3]  Hanover and Sentinel appeal, and we affirm.

Background.  LMP alleged the following facts.[4]  LMP owned commercial property that contained fourteen rental units.  LMP leased one unit to Hanover's insured, Do Can Brewery, LLC (Do Can), and another unit to Sentinel's insured, North East Form Engineering, Inc. (North East).  On February 6, 2015, the owner of Do Can, Patrick Slattery, was expecting the delivery of equipment.  When the tractor trailer making the delivery arrived, Slattery directed the driver to the rear alley of the building.  There, the tractor trailer got stuck in snow and ice. Slattery and an employee of North East, Jeffrey Sperrey, attempted to extricate the tractor trailer using Sperrey's pickup truck.  During the efforts to extricate the tractor trailer, Sperrey backed the pickup truck into Slattery and Gregg Stevens, an employee of another tenant.  Slattery was killed and Stevens was injured.  Slattery's estate and Stevens brought

_____

[3] LMP agreed to a voluntary dismissal, with prejudice, of its c. 93A claims.

[4] For purposes of this appeal, Hanover and Sentinel do not dispute the factual allegations regarding the accident or that they insured two of LMP's tenants.  This appeal instead presents legal questions regarding how to interpret the underlying policies.  We review the allowance of the motion for judgment on the pleadings de novo.  Ridgeley Mgt. Corp. v. Planning Bd. of Gosnold, 82 Mass. App. Ct. 793, 797 (2012).

2

claims against LMP, which LMP's insurer, Liberty Mutual Insurance Company (Liberty Mutual), settled on LMP's behalf.

LMP further alleged that Hanover and Sentinel also had a duty to defend and indemnify it where LMP was an additional insured on Hanover's policy with Do Can and Sentinel's policy with North East.[5]  In particular, Hanover's policy with Do Can provided that LMP was an additional insured "only with respect to . . . [p]remises you own, rent, lease or occupy."  Sentinel's policy with North East provided that LMP was an additional insured "only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you."

Discussion.  1.  Leased premises.  In arguing that they had no duty to defend or indemnify LMP, Hanover and Sentinel rely on the fact that LMP was an additional insured (1) under the Hanover policy, only with respect to Do Can's leased premises and (2) under the Sentinel policy, only with respect to liability arising out of the ownership, maintenance, or use of North East's leased premises.  Hanover and Sentinel argue that they had no duty to defend or indemnify LMP because the accident

_____

[5] The real plaintiff in interest is Liberty Mutual, which brought this action in LMP's name pursuant to Mass. R. Civ. P. 17 (a), 461 Mass. 1401 (2011).  This was not disclosed to the court prior to oral argument and we caution that, going forward, disclosure would be the better practice.

3

occurred in the rear alley, which they assert was a common area that was not part of the premises leased by their respective insureds.[6]

In determining whether the rear alley was part of the leased premises, we look to how the leases defined the leased premises, applying the usual rules of contract interpretation. "When the words of a contract are clear, they control, and we must construe them according to their plain meaning, in the context of the contract as a whole."  Lieber v. President & Fellows of Harvard College, 488 Mass. 816, 823 (2022).  Here, the words of the contract were clear; the leased premises included the rear alley.  Using Do Can's lease as an example, the leases provided as follows:

"1.   PARTIES   . . . LESSEE hereby leases the following described premises:

"2.   PREMISES   A portion of the premises located at 44 Stedman Street, Lowell, Massachusetts being commonly referred to as Unit 4 . . . together with the right to use in common with others entitled thereto the common areas for ingress and egress and parking."[7]

---

[6] Separately, Sentinel argues that the accident did not arise out of North East's ownership, maintenance, or use of the back alley.  This argument is unavailing where the accident arose out of a North East employee's use of the back alley to try to free the tractor trailer.  See Commerce Ins. Co. v. Theodore, 65 Mass. App. Ct. 471, 476 (2006) (we give "arising out of" broad meaning).

[7] North East's lease included the same language but specified that North East was leasing Unit 9.

Read together, these paragraphs defined the leased premises as including the right to use the common areas for ingress and egress and parking, meaning the rear alley.[8] While the leases could have been drafted to draw a distinction between the leased units and the accompanying right to use the common areas, identifying only the units as the leased premises, that is not what occurred here.[9]

We are unpersuaded by Hanover and Sentinel's arguments to the contrary. Hanover and Sentinel argue that the leases distinguished between the premises and the leased premises, with the premises including the common areas and the leased premises not including the common areas. First, Hanover and Sentinel assert that because the second paragraph of each lease, quoted above, had a heading that read "PREMISES," the language under

―――――――――――――――

[8] Hanover and Sentinel do not dispute that the areas for ingress and egress and parking included the rear alley.

[9] Hanover and Sentinel suggest that the leased premises could not have included the common areas because, according to Hanover and Sentinel, Massachusetts case law recognizes a distinction between leased premises and common areas. In part, Hanover and Sentinel rely on cases holding that (1) absent a contractual obligation to keep a leased premises safe, a commercial landlord is not liable for personal injuries arising from defects in leased premises but (2) a commercial landlord is liable for personal injuries arising from defects in common areas. See, e.g., Humphrey v. Byron, 447 Mass. 322, 329 (2006). However, this case presents a different question: where the parties to a commercial lease define the leased premises as including common areas, are those common areas within the leased premises for purposes of determining the scope of an additional insured provision. Hanover and Sentinel do not provide any reason why the definition in the lease would not control.

5

that heading described the premises, not the leased premises. We are unpersuaded where the words immediately preceding the "PREMISES" heading stated that that the "LESSEE hereby leases the following described premises," thereby clarifying that the premises being described were the leased premises. Second, Hanover and Sentinel assert that other lease provisions referred to the leased premises in ways that logically could not have applied to the common areas, and that the leased premises therefore did not include the common areas. It is true that some references to the leased premises logically could not have applied to the common areas, for example a requirement that the leased premises be maintained at a temperature of at least fifty degrees Fahrenheit and a provision making LMP responsible for the "removal of snow and ice from the parking lots surrounding the leased premises." However, other references to the leased premises logically could have applied to the common areas,[10] and the few instances where that was not true do not overcome the unambiguous definition contained in the second paragraph of each lease.

---

[10] These references included, for example, a requirement that the leased premises be used for the conduct of the tenant's business, a prohibition on conducting an unlawful trade or occupation in the leased premises, and a prohibition against subletting the leased premises without consent.

2. Automobile exclusion. Separately, Sentinel argues that there was no coverage where its policy with North East included an automobile exclusion, which excluded the following from coverage:

"'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'

"This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured."

In addressing Sentinel's arguments, we are guided by Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240 (1986), and First Specialty Ins. Corp. v. Pilgrim Ins. Co., 83 Mass. App. Ct. 812 (2013). We conclude that the allegations against LMP do not fall within the automobile exclusion, as that exclusion has been interpreted under the case law.

In Marnell, 398 Mass. at 241-242, two parents sought a defense and indemnification from their insurer for allegations that they negligently supervised a party hosted by their underage son -- an unnamed insured on the policy -- who left the party in an intoxicated state, drove his car under the influence, and struck and killed another person. The insurance

7

company argued that the following exclusion barred coverage: "[liability coverages] do not apply to bodily injury or property damage . . . arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by or rented or loaned to any insured" (emphasis added).  Id. at 242.  The insurance company argued that because the allegations arose out of use of a motor vehicle owned or operated by any insured, namely the son who was an unnamed insured, the parents were not entitled to liability coverages.  See id. at 242-243.  The Supreme Judicial Court disagreed, noting that because the policy also contained a severability of insurance clause, "the term 'insured' as used in the motor vehicle exclusion refers only to the person claiming coverage under the policy."  Id. at 244.  Because the motor vehicle involved in the fatal accident was not owned or operated by or rented or loaned to either of the parents who were claiming coverage, the exclusion did not bar coverage.  See id. at 244-245.

In response, some insurance companies added clarifying language to their automobile exclusions -- specifically, they added the language that appears in the second paragraph of the Sentinel automobile exclusion quoted above -- and that language was addressed in First Specialty Ins. Corp., 83 Mass. App. Ct. at 814 n.3, 818.  In First Specialty Ins. Corp., this court noted that "the second paragraph clearly envisions that two

8

different insureds are involved." Id. at 818. Specifically, the second paragraph of the automobile exclusion bars coverage if "(1) claims are brought against 'any insured' alleging negligent supervision or hiring of others by 'that insured,' and (2) the occurrence underlying those claims involved an automobile owned or operated by 'any insured.'" Id. This court concluded that in the first clause, the reference to "any insured" meant only the insured claiming coverage but that in the second clause, the reference to "any insured" actually meant any insured. See id. at 819. In sum, where an automobile exclusion contains this additional language, for each insured claiming coverage, "we must determine whether, according to the complaint, that [insured] negligently hired or supervised another insured person who owned or operated the automobile involved in the occurrence underlying the claim. If so, that claim of negligence is unambiguously excluded from coverage." Id.

Here, applying Marnell, the bodily injury did not arise out of the ownership, maintenance, use, or entrustment to others of a motor vehicle owned or operated by or rented or loaned to LMP, and the first paragraph of the automobile exclusion therefore does not bar coverage. Turning to the second paragraph of the automobile exclusion, under First Specialty, we look to whether the claims against LMP alleged negligent supervision or hiring.

9

We conclude that they did not.  The allegations against LMP were based on LMP's failure to properly remove snow and ice from the rear alley.  Slattery's estate alleged that LMP "failed to properly clear the [p]remises of snow and ice," and that the tractor trailer became "lodged in snow and ice on the [p]remises in the unsafe area created by [LMP's] negligence."[11]  Where the claims against LMP did not allege negligent supervision or hiring, the second paragraph of the automobile exclusion does

---

[11] Sentinel points us to an allegation that LMP caused tortious injury and death "through [its] ownership, operation, management, maintenance and control of the Premises," and suggests that this allegation concerned LMP's obligation to supervise snow removal contractors or anyone trying to free the tractor trailer.  However, when read in the context of the other allegations regarding LMP's failure to properly remove the snow and ice, the allegation on which LMP relies concerned LMP's obligation to keep the rear alley free of snow and ice.

not apply, and the automobile exclusion does not bar coverage.[12]

                <u>Judgment affirmed</u>.

                By the Court (Henry, Shin &
                  Hodgens, JJ.[13]),

*Joseph F. Stanton*

                Clerk


Entered:  June 14, 2023.

---

[12] LMP's request for an award of its appellate attorney's fees and costs pursuant to <u>Preferred Mut. Ins. Co</u>. v. <u>Gamache</u>, 426 Mass. 93 (1997), is denied.  The rule in <u>Gamache</u> does not apply here.  As explained in <u>John T. Callahan & Sons, Inc</u>. v. <u>Worcester Ins. Co</u>., 453 Mass. 447, 447 (2009),

> "It is well settled that an insured is entitled to recover reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the terms of the policy.  See [<u>Gamache</u>, <u>supra</u> at 98]. What happens when the party incurring attorney's fees and expenses to establish the insurer's obligation to defend is not the insured but a different insurer that has defended and provided coverage to the insured?  That is the question raised in this case.  We answer that the exception to the American Rule in <u>Gamache</u> and its progeny does not extend to allow the prevailing insurer recovery of its attorney's fees associated with an action brought to establish the defense and coverage responsibility of another insurer."

[13] The panelists are listed in order of seniority.