722 40 Mass. App. Ct. 722

New England Mutual Life Insurance Co. *v.* Liberty Mutual Insurance Co.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY *vs.*
LIBERTY MUTUAL INSURANCE COMPANY.

No. 95-P-13.

Suffolk. March 11, 1996. - July 17, 1996.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Insurance,* Insurer's obligation to defend, Construction of policy. *Employment,* Discrimination. *Words,* "Arising out of."

An insurance policy, which unambiguously provided that coverage would not apply to personal injury "arising out of . . . discrimination that is unlawful or which is committed by or at the direction of the insured," excluded coverage for not only claims for personal injury based on a violation of a statute but also all claims, including misrepresentation, negligence, and loss of consortium, a plaintiff asserted against the insured arising out of the insured's alleged discriminatory treatment of the plaintiff, its former employee. [723-727]

An insurer had no duty to defend property damage claims against its insured that were not within the scope of losses contemplated by the policy. [727-728]

CIVIL ACTION commenced in the Superior Court Department on October 12, 1990.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

*Andre A. Sansoucy* for the plaintiff.

*Kevin D. McElaney* for the defendant.

PORADA, J. New England Mutual Life Insurance Company (insured) filed an action in the Superior Court against the Liberty Mutual Insurance Company (insurer), in which it sought a declaration that the insurer had a duty to defend the insured and several of its employees in an action brought against them by Marcia Henderson and her family in the United States District Court of Massachusetts arising out of alleged discriminatory treatment of Henderson as an employee of the insured. The insured and insurer filed cross mo-

40 Mass. App. Ct. 722      723

New England Mutual Life Insurance Co. *v.* Liberty Mutual Insurance Co.

tions for summary judgment. The motion judge granted the insurer's motion on the grounds that all of the claims set forth in the Henderson complaint were based on allegations of employment discrimination and, therefore, were barred by the clause in the insured's policy excluding coverage for personal injury claims "arising out of . . . discrimination which is unlawful or which is committed by or at the direction of the insured."

On appeal, the insured claims that the judge erred because the exclusion in its policy does not negate coverage for the common law claims in the Henderson complaint,[1] does not apply absent a finding that unlawful discrimination occurred, and does not apply to the complaint's specific claims of misrepresentation, negligent supervision, loss of consortium, and property damage. We affirm the judgment.

There is no question that the insurer had a duty to defend the Henderson action if any allegations in the complaint "were reasonably susceptible of an interpretation that they stated or adumbrated a claim covered by" the policy issued to its insured. *Liquor Liab. Joint Underwriting Assn. of Massachusetts* v. *Hermitage Ins. Co.*, 419 Mass. 316, 319-320 (1995). *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983), after remand, 20 Mass. App. Ct. 215 (1985), *S.C.*, 397 Mass. 837 (1986). The policy in question provided:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury. . . . [C]overage does not apply to personal injury arising out of . . . discrimination which is unlawful or which is committed by or at the direction of the insured."

---

[1] The Henderson complaint contained ten counts as follows: (1) breach of contract; (2) sex discrimination in violation of 42 U.S.C. §§ 2000 (e)-1 et seq. and G. L. c. 151B; (3) violation of the Equal Pay Act, 29 U.S.C. §§ 201 & 206 et seq. and G. L. c. 149, § 105A; (4) violation of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H & 11I; (5) promissory estoppel; (6) intentional misrepresentation; (7) interference with advantageous relationships; (8) civil conspiracy; (9) negligence; (10) loss of consortium and parental society.

Relying on *Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633 (1986), the insured argues that the phrase "discrimination which is unlawful" should be read to exclude from coverage only those claims in the Henderson complaint which are based on violations of specific statutes barring discrimination and not those claims based on common law theories. In *Newell-Blais, supra* at 636-637, the Supreme Judicial Court held that language in a policy excluding from coverage liability imposed "by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage" did not excuse the insurer from its duty to defend its insured in a wrongful death action based on negligence where the underlying complaint against the insured averred that the insured had negligently sold alcoholic beverages to one of its customers in violation of G. L. c. 138, § 69. The Supreme Judicial Court reasoned that the exclusion applied only to those situations where the violation of the statute without more was the direct cause of liability and not to those situations in which it was relied upon solely as evidence of negligence. *Ibid.*

The exclusionary language in this case, by contrast, is much broader in that it excludes any and all personal injury which "arises out of" any unlawful discrimination. When this language is read in its ordinary and usual sense, there is nothing therein to suggest that the exclusion applies only to those claims for personal injury based on a direct causal relationship between a violation of a statute and the personal injury suffered. To adopt the construction advocated by the insured would distort not only the plain meaning of the clause, see and compare *Jefferson Ins. Co. of N. Y.* v. *Holyoke*, 23 Mass. App. Ct. 472, 474-476 (1987), but also what an "objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990).

We therefore conclude that the insured's reliance on *Newell-Blais* is misplaced and that the expansive language of the exclusionary clause is not limited to claims for personal injury based solely on a violation of a statute but encompasses all claims for personal injury which arise out of the alleged discriminatory treatment of Marcia Henderson. See also *Liquor Liab. Joint Underwriting Assn. of Mass.* v.

*Hermitage Ins. Co.*, 419 Mass. at 320 & n.4 (in ruling that an endorsement in a commercial general liability insurance policy that excluded an "assault and/or battery" from coverage was not adequately clear to exclude from coverage a claim of negligent failure of the insured to provided security on its premises, the Supreme Judicial Court noted that the exclusionary language before the court was not as expansive as the language used in other policies which excluded "any claim arising out of, or based on, an assault and battery").

The insured also argues that the exclusionary clause does not apply absent a finding of unlawful discrimination. This argument lacks merit.[2] The insured bases its argument on language used in another exclusion endorsement in the policy which negates coverage for "any claim based upon an allegedly unfairly discriminatory . . . act" in contrast to the language in the subject exclusion which refers to "discrimination which is unlawful." As a result of the use elsewhere in the policy of the modifier "allegedly" to describe a discriminatory act and its omission in the subject clause, the insured argues that this creates an ambiguity in the exclusionary clause under scrutiny. Apart from the fact that the other exclusionary clause is inapplicable to the Henderson claims and the fact that the language of the exclusionary clause is unambiguous, this construction would lead to the illogical result that the Henderson case would have to be tried to conclusion before the insurer's duty to defend could be determined. No reasonable policy holder reading the language of the exclusionary clause would have expected that to be the case. *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985).

Finally, the insured argues that the specific claims in Henderson's complaint in the Federal action for misrepresentation, negligence, and loss of consortium are not precluded from coverage under the insured's policy because they do not "arise out of discrimination which is unlawful." The insured bases its argument on a construction of the phrase "arising out of" as being the equivalent of the phrase "caused by." For this construction, the insured relies upon our decision in *M. DeMatteo Constr. Co.* v. *A.C. Dellovade, Inc.*, 39 Mass. App. Ct.

---

[2]We note that this argument is devoid of case citation and thus does not rise to the level of appellate argument. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

1, 3 (1995), in which we held that there was no meaningful distinction between the language "arising out of or in consequence of," as used in an indemnity clause in a construction contract between a general contractor and subcontractor, and the words "caused by" set forth in G. L. c. 149, § 29C, which permits a general contractor to require indemnification by a subcontractor only in connection with harm "caused by" the subcontractor, its employees, agents, or subcontractors. *Ibid*.

We do not, however, consider the narrow construction given the phrase "arising out of" in that case controlling because the court's interpretation sprang out of a specific statutory context and did not involve an insurance contract's exclusionary clause. Rather, we look to the plain language of the exclusionary clause and construe its language in the usual and ordinary sense in its application to the allegations of the Henderson complaint. *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978). The usual meaning ascribed to the phrase "arising out of" is much broader than "caused by"; the former phrase is considered synonymous with "originate" or "come into being." Webster's Third New Intl. Dictionary 117 (1981). See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. at 320 & n.4. This construction has found acceptance in the interpretation of exclusionary clauses in other insurance contracts. *Lally*, 374 Mass. at 605-606; *Merrimack Mut. Fire Ins. Co.* v. *Sampson*, 28 Mass. App. Ct. 353, 355-356 (1990). In the *Lally* case, the Supreme Judicial Court determined that the insurer owed no duty to defend its insured against claims of negligent entrustment of a motor vehicle of an operator of a motor vehicle under a homeowner's policy which excluded from its coverage claims "arising out of the ownership, . . . operation, [or] use . . . of . . . any . . . motor vehicle." *Id.* at 604-605. This was so because the negligence was not exclusive of but rather was derived from the ownership, operation, or use of the motor vehicle. *Id.* at 606.

Similarly in this case, the claims in the Henderson complaint for misrepresentation, negligence, and loss of consortium are not exclusive of the alleged discriminatory treatment of Henderson. Instead, as Henderson alleges in the very first paragraph of her amended complaint and repeats thereafter in each of her respective claims for relief, each claim "aris[es]

out of the defendants' discriminatory treatment" of her. Without the underlying discriminatory acts against Henderson, there would have been no personal injuries and, therefore, no basis for a suit against the insureds for misrepresentation, negligence, and loss of consortium. Because all of these claims for personal injuries are derived from the alleged discriminatory treatment of Henderson by the insureds, we fail to see how they survive the exclusionary clause. It is the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend.[3] Consequently, the insurer had no duty to defend the insured under the terms of the policy.

Even if the discrimination exclusion were to apply to Henderson's personal injury claims, the insured contends that the insurer nevertheless had a duty to defend Henderson's property damage claims because the discrimination exclusion applied only to claims for personal injuries. While we agree that the discrimination exclusion applied only to the claims for personal injuries, we conclude, based on the language of the

---

[3]Other jurisdictions have reached the same conclusion. See, e.g., *Old Republic Ins.* v. *Comprehensive Health Care Assocs. Inc.*, 2 F.3d 105, 108-109 (5th Cir. 1993) (claims of employees against employer for slander, defamation, invasion of privacy, negligent hiring and supervision based on sexual assault, harassment, and discrimination of the employees by their supervisor not covered by policy which excluded coverage of any claim arising from the employment relationship between the insured and any of its employees); *Reliable Springs Co.* v. *St. Paul Fire and Marine Ins.*, 869 F.2d 993, 995 (6th Cir. 1989) (claims of an employee against employer for negligent and intentional infliction of emotional distress which relied upon the discrimination claims for their factual bases and incorporated them by reference barred under general liability policy which excluded coverage for discrimination and unfair employment practices); *Continental Cas. Co.* v. *Richmond*, 763 F.2d 1076, 1081 (9th Cir. 1985) (exclusion for claims arising from bodily injury, death, and assault and battery barred coverage for civil rights claims brought against city based on an alleged pattern and practice of police brutality against black citizens on ground that those claims had their genesis in the beating of a black defendant by police); *Transamerica Ins. Co.* v. *Superior Court*, 29 Cal. App. 4th 1705, 1716-1717 (1994) (employee's claims of sex discrimination, wrongful termination, intentional and negligent infliction of emotional distress, and unfair business practices barred by policy provision which excluded coverage "for any liability arising from any claim or action . . . for discrimination based upon sex").

policy, that the insurer also had no duty to defend the property damage claims.

The policy provided that the insurer would pay on behalf of the insured all sums which the insured would be legally obligated to pay as property damage subject to certain exceptions not applicable here. Property damage was defined in the policy to include "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." While the Henderson complaint alleges that she suffered property damage because she was forced to sell her home in Massachusetts and move to Maine out of fear that she would be forced out of a job based on her having filed an equal opportunity complaint against the insured, we fail to see how this loss of her home rises to the loss of use of tangible property contemplated by the policy. As the insurer points out, Henderson's complaint does not allege that her property was rendered useless or that she suffered a decline in market value. See and compare *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147-150 (1984). Rather, the loss of Henderson's home in Massachusetts was occasioned by her voluntary decision to sell her home and move to Maine. In these circumstances, the policy created no duty on the part of the insurer to defend any cause of action in the Henderson complaint alleging property damage.

*Judgment affirmed.*