Hogan, Maureen B., J.
This case arises from personal injuries suffered by the plaintiff, David Parker (“Parker”), while working as an iron-worker at a construction site located at 176 Lincoln Street in Brighton, Massachusetts. John Moriarty & Associates, Inc. (Moriarly) was the general contractor of the construction project, having contracted with CC&F Lincoln Street, LLC, the owner of the property, to construct a building on the property. Moriarty subcontracted with Isaacson Structural Steel, Inc. (“Isaacson”) to fabricate and erect the steel at the project. Isaacson fabricated the steel and subcontracted with James F. Stearns Co., Inc. (“Steams”) to erect it. Steams directed the work on the project regarding the erection of the steel, but used an affiliated company, Accord Steel & Precast Co. (“Accord”), to employ the ironworkers who performed the actual labor. Parker was an employee of Accord.
On August 30, 2002, Parker was working for Steams and Accord as an ironworker, performing work on the construction project in Brighton under the subcontract. As he was ascending a ladder, cariying a five-gallon bucket of tools in one hand and cradling the ladder with his other arm, Parker slipped and fell to the ground. The ladder was wet because of rain. Parker suffered bodily injuries as a result of the fall.
Parker filed a complaint on March 23,2005, asserting a negligence claim against Moriarty, the general contractor, for negligently failing to provide a safe workplace. By third-party complaint, Moriarty brought claims against Steams and Evanston Insurance Company (“Evanston”), Stearns’ insurer. Moriarty’s third-party claims against Steams included claims for indemnification, contribution, and breach of contract for failure to provide insurance. Having been named as an additional insured on Stearns’ commercial general liability policy with Evanston, Moriarty asserted a direct third-party claim against Evanston for breach of contract for unjustifiably refusing to defend and indemnify it as an additional insured. On or about October 19, 2005, Moriarty had tendered its defense to Evanston and requested Ev-anston to defend and indemnify it against Parker’s claims. Evanston refused.
Moriarty settled the negligence claim against it with Parker. Moriarty’s third-party claims against Stearns and Evanston are the only remaining claims. Evans-ton moved for summary judgment on all claims against it, arguing that the insurance policy does not provide coverage to Moriarty for Parker’s claims. Moriarty opposed and filed a cross motion for summary judgment, asserting that, as a matter of law, the policy provides coverage to Moriarty for Parker’s claims and Evanston had a duty to defend Moriarty and to indemnify it for the settlement of Parker’s claims. Alternatively, Moriarty moved for partial summary judgment against Stearns, arguing that if the Evanston policy does not provide coverage for Moriarty, as a matter of law, Stearns breached its contract to provide Moriarty with insurance. Stearns also moved for summary judgment in its favor on the breach of contract claim for failure to provide insurance, arguing that it did have Moriarty named as an additional insured on the Evanston policy.
The parties’ motions for summary judgment are presently before the court. For the following reasons, Evanston’s motion for summary judgment is DENIED, Moriarty’s cross motion for summary judgment is ALLOWED in part and DENIED in part, Moriarty’s motion for partial summary judgment against Stearns is DENIED, and Stearns’ motion for summary judgment against Moriarty is DENIED.

*20
BACKGROUND

Moriarty contracted with CC&F to construct a building on CC&F’s properly and serve as the general contractor. Moriarty subcontracted with Isaacson to fabricate and erect the steel for the construction of the building. The subcontract between Moriarty and Isaacson contained an indemnity provision, which provided:
11.11 Indemnification
11.11.1 To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys fees, arising out of, in connection with or resulting from the performance of the Subcontractor’s Work under the Subcontract, where any such claim, damage, loss or expense is attributable to bodily injuiy, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom arose in whole or in part from any negligent or non-negligent act or omission of the Subcontractor or its agents, employees, independent contractors or others. Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph 11.11.
11.11.3 In any and all claims against the Owner, Architect, or Contractor or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this paragraph 11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for the Subcontractor under worker’s or workmen’s compensation acts, disability benefit acts, or other employee benefit acts.
The subcontract between Moriarty and Isaacson also included a provision by which Isaacson agreed to name Moriarty as an additional insured under a commercial general liability insurance policy:
Article 9
Insurance
9.3 The Subcontractor shall provide evidence of commercial general liability insurance, most current forms, including contractual liability coverage, with a minimum two million dollar liability limit each occurrence and a general aggregate limit of two million dollars also naming CC&F Lincoln, LLC; Cabot & Forbes of New England, Inc.; and John Moriarty & Associates, Inc. as additional insureds, and Workers’ Compensation Insurance as required by the Commonwealth/Massachusetts . . .
Isaacson fabricated the steel and subcontracted with Stearns to erect it. Stearns directed the work on the project regarding the erection of the steel, but used its affiliated company, Accord, to employ the ironwork-ers who performed the actual labor. Parker, an iron-worker, was an employee of Accord. Pursuant to the subcontract/purchase order between Steams and Isaacson, Stearns agreed to be bound by all the terms and provisions of the contract between Moriarty and Isaacson: “The erector [Stearns] also agrees to be bound by all the terms and provisions of the contract between Isaacson Structural Steel, Inc. and John Moriarty & Assoc., hereinafter referred to as the ’’Contract" which terms and provisions are expressly incorporated into this purchase order."
The subcontract between Stearns and Isaacson also contained the following provision under which Stearns agreed to defend, indemnify and hold harmless Moriarty:
F. Indemnity
To the full extent permitted by law, JFS [Stearns] agrees to defend, indemnify and hold harmless Isaacson Structural Steel, Inc., the Owner, General Contractor [Moriarty], Architect, Architect’s Consultants, as well as any other parties which Isaac-son Structural Steel, Inc. is required under, the contract to defend, indemnify and hold harmless, and their agents, servants and employees from and against any and all claims, costs, damages, losses, expenses, or liabilities (including but not limited to attorneys fees) attributable to bodily injuiy, sickness, disease or death, or to damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from, or occurring in connection with the performance of the work by JFS [Stearns], its subcontractors or suppliers, or their agents, servants or employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, JFS’s duty hereunder shall not arise if such injuiy, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder. JFS’s obligation hereunder shall not be limited by the provisions of any workers’ compensation or similar act. Nothing in this paragraph shall be construed to require any indemnification which would make this paragraph void or unenforceable or to eliminate or reduce any indemnification or rights which Isaacson Structural Steel, Inc. or any other party indemnified hereunder have by law.
Under this provision, Stearns agreed to defend, indemnify and hold harmless Moriarty for claims and liabilities for personal injuries caused by, arising out of, resulting from, or occurring in connection with the performance of the work by Stearns, its subcontractors, or their employees, even where such injuiy was caused in part by the negligence of Moriarty, provided *21 it was not caused by the sole negligence of Moriarty. Parker, an employee of Accord, an affiliate of Stearns, was performing ironwork on the construction project under the direction of Stearns when he was injured. Parker’s claims for personal injuries against Moriarty arose out of and occurred in connection with the work by Steams on the construction project. Under this provision, therefore, Steams is required to defend, indemnify and hold harmless Moriarty for Parker’s claims unless Parker’s claims were caused by the sole negligence of Moriarty.[1]
In its subcontract/purchase order with Stearns, Isaacson required and Steams agreed to name it and Moriarty as additional insureds on its policy of commercial general liability insurance. The subcontract between Stearns and Isaacson provided:
Schedule A
Scope of Work — Erection
Provide proof of insurance to include general liability, automobile insurance and statutory workers’ compensation insurance. Name Isaacson Structural Steel, Inc. as the certificate holder. List the following as additional insured: Isaacson Structural Steel, Inc . . . [and] John Moriarty & Associates, Inc.
Stearns had an existing commercial general liability policy of insurance with Evanston. The Common Policy Declarations of this policy identify as Named Insureds, “James F. Steams Co., Inc., South Shore Contracting Corp., and Accord Steel & Precast Erector.” The coverage provided by the policy includes “those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." The policy also provides that Evanston has “the right and the duty to defend any ‘suit’ seeking those damages.” By endorsement modifying that policy, Steams added Moriarty as an additional insured. The additional insured endorsement (“Endorsement”) provides:
WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of “your Work”[2] for that insured by or for you and then only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely the negligence or responsibility of the Named Insured. This coverage is limited to “your work” completed within the policy period.
In the Endorsement, the “Schedule” provides: “Name of person or organization: AS PER WRITTEN CONTRACT,” which refers to the subcontracts pursuant to which Steams agreed to name Moriarty as an additional insured. The certificate of insurance identified Moriarty as an additional insured under the general liability coverage.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community NationalBank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Apartymoving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). All evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
As a general rule, the insured seeking coverage bears the burden of proving that its claim is within the description of the risks covered by the policy. Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140 (1981); Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 321 (1991). The insurer, however, has the burden of proving the applicability of any exclusion to coverage. See Murray v. Continental Ins. Co., 313 Mass. 557, 563 (1943); Ratner v. Canadian Universal Ins. Co., 359 Mass. 375, 381 (1971); Camp Dresser & McKee, 30 Mass.App.Ct. at 321.
Interpretation of an insurance contract is a question of law for the trial judge. Ruggerio Ambulance Service, Inc. v. National Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000); Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words. Cody, 387 Mass. at 146; Macarthur v. Massachusetts Hosp. Serv., Inc., 343 Mass. 670, 672 (1962). A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced according to its terms. Cody, 387 Mass. at 146. Where the policy is ambiguous, doubts regarding the meaning of any ambiguous words or provisions must be *22 resolved against the insurer and an insured is entitled to the most favorable interpretation of the policy language. let; Dilbert v. Hanover Ins. Co., 63 Mass.App.Ct. 327, 335 (2005). Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431-32 (1965); Macarthur, 343 Mass. at 672; Bates v. John Hancock Mut. Life Ins. Co., 6 Mass.App.Ct. 823, 824 (1978). When construing the language of an insurance policy, it is appropriate to consider whether a reasonable insured, reading the relevant policy language, would expect to be covered. Dilbert, 63 Mass.App.Ct. at 327.
An insurance company’s duty to defend is broader than its duty to indemnify. Ruggerio, 430 Mass. at 797; Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., Inc., 406 Mass. 7, 10 (1989). An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured. The duty to defend, however, is antecedent to, and independent of, the duty to indemnify. Boston Symphony Orchestra, 406 Mass. at 10. The duty to defend is not, and cannot be determined by facts proven at trial, but rather is based on the facts alleged in the complaint and those facts which are known by the insurer. Sullivan v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003); Boston Symphony Orchestra, 406 Mass. at 10-11; Ruggerio, 430 Mass. at 797. An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy. Ruggerio, 430 Mass. at 797; Continental Cas. Co. v. Gilbane Building Co. et al., 391 Mass. 143, 146-47 (1964). It is the source from which the loss originates rather than the specific theories of liability alleged in the complaint which determines the insurer’s duty to defend. Bagley v. Monticello Ins. Co., 430 Mass. 454, 459 (1999). “The process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Sullivan, 439 Mass. at 394 (2003), quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (2003). There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. Id. In order to give rise to the duty to defend, the complaint need only show a possibility that the liability claim falls within the insurance coverage. Id.
In its summary judgment motion, Evanston argues that it did not owe a duty to defend Moriarty against Parker’s claims and does not have a duty to indemnify Moriarty because Moriarty is not covered for Parker’s claims under the Endorsement and such claims are excluded from coverage under the Cross-suits provision. In opposition, Moriarty argues that Evanston’s interpretation of the Endorsement renders the policy illusory and that it should therefore be interpreted to provide coverage to Moriarty for Parker’s claims. Moriarty further argues that such claims are not excluded under the “cross-suits” provision because such an interpretation of the cross-suits exclusion would conflict with the “Separation of insured’s” provision in the policy.

I. Coverage of Moriarty Under the Additional Insured Endorsement

The additional insured endorsement (“Endorsement”) includes Moriarty as an additional insured, but limits claims, losses and liabilities that will be covered to those arising out of the work of Stearns and Accord (both Named Insureds) for Moriarty performed by or for Stearns or Accord and arising out of the operations of Steams or Accord. Parker’s claim clearly arose both out of the work of Steams and Accord for Moriarty, performed on their behalf by Parker, and out of their operations. See Bagley, 430 Mass. at 457; Rischitelli v. Safety Ins. Co., 423 Mass. 703, 704 (1996); New England Mut. Life Ins. Co. v. Liberty Mut Ins. Co., 40 Mass.App.Ct. 722, 724 (1996). The claim against Moriarty thus meets these first two requirements for coverage under the Endorsement.
The Endorsement, however, includes a third limitation providing coverage only “if such claim, loss or liability is determined to be solely the negligence or responsibility of Stearns or Accord.” Evanston asserts that under this limiting clause, the claims against Moriarty are not covered under the policy and that Evanston, therefore, did not have a duty to defend and does not have a duty to indemnify Moriarty for the settlement with Parker. According to Evanston, this Endorsement provides coverage for Moriarty only for vicarious liability imposed because of the sole negligence of Stearns or Accord. Evanston reasons that because Parker’s complaint asserted a claim against Moriarty for its own negligence, such claim can never be determined to be the sole negligence of Stearns or Accord and therefore is clearly not covered under the policy.
The question of whether Moriarty is covered for Parker’s claims under this Endorsement requires a “determination” regarding the claims. The clause does not identify the entity which shall make such a determination. Because the determination involves legal claims and liabilities, the court interprets this clause to mean a determination by a court, jury, arbitrator or other entity to which the parties submit their claims for adjudication.
Evanston argues that there is no possibility that Parker’s claims can be determined to be solely the negligence of Stearns because the complaint alleges the negligence of Moriarty and as a matter of law, Moriarty, a general contractor, cannot be held vicariously liable for the negligence of Steams, a subcontractor. Evanston contends, therefore, that the claims against Moriarty are not covered by the policy. The *23 problem with Evanston’s argument is twofold. Under Evanston’s interpretation, there can never be coverage under the policy for Moriarty as an additional insured. The first two clauses of the Endorsement provide coverage for claims arising out of work performed by or for Steams for Moriarty. If the third clause limits coverage to vicarious liability for the sole negligence of Stearns, it takes away the coverage that the first two clauses provide. See Suffolk Construction v. Royal & Sunalliance Ins. Co., 2002 WL 391345 (Mass.Super. 2002) [14 Mass. L. Rptr. 295). At best, the conflict between these clauses renders the Endorsement ambiguous. At worst, to the extent that it limits coverage to claims that are determined to be solely the negligence of Stearns, the third limiting clause renders the policy illusory and is against public policy because it negates the very coverage that the policy purports to provide. See Bagley, 430 Mass. at 459. If this were the only limiting language in the third clause of the Endorsement, the court would find the Endorsement ambiguous and construe it in favor of coverage for Moriarty. See Cody, 387 Mass. at 146.
This clause in the Endorsement, however, limits coverage for claims determined to be “solely the negligence or responsibility" of Steams. The parties have not addressed the meaning of the clause to the extent that it allows coverage with respect to claims against Moriarty that may not be solely the negligence of Stearns, but which are determined to be solely the responsibility of Steams. The third-party claims of Moriarty against Stearns which will be determined at trial include a claim for indemnification under the subcontract between Stearns and Isaacson. If Moriarty prevails on this claim against Evanston, Parker’s claims and Moriarty’s liability will have been “determined to be solely the . . . responsibility of’ Stearns. In such case, the Endorsement will provide coverage for the claims against Moriarty. Because the issue of coverage depends upon such a determination and the outcome of the trial on Moriarty’s indemnification claim, there are genuine issues of material fact as to Evanston’s duty to indemnify, and summary judgment is inappropriate as to this issue.
Evanston’s “duty to defend, however, is antecedent to, and independent of, the duty to indemnify.” Boston Symphony Orchestra, 406 Mass. at 10. Although an insurer’s obligation to indemnify may arise only after an adjudication or judgment, the duty to defend commences when the allegations of a complaint are reasonably susceptible of an interpretation that the claim is covered by the terms of the insurance policy. Here, a fair reading of the complaint and the third-party complaint reveals that the claims asserted by Parker arose out of work performed by Stearns and Parker for Moriarty, as well as out of Steams’ operations. Given Moriarty’s indemnification claim, there is also a real possibility that the claims will be determined to be solely the responsibility of Steams. Absent exclusion of such claims under another provision of the policy, therefore, as a matter of law, Evanston had a duty to defend Moriarty against Parker’s claims and breached its duty when it refused to defend Moriarty.
Evanston’s breach of its duty to defend, however, does not automatically mean that Evanston must indemnify Moriarty for the settlement with Parker. See Polaroid v. Traveler’s Indem. Co., 414 Mass. 747, 760 (1993); Swift v. Fitchburg Mut. Ins. Co., 45 Mass.App.Ct. 617, 625 (1998). The issue of damages resulting from Evanston’s breach of its duty to defend involves material issues of fact and cannot be determined as a matter of law on this record.

II. Cross-Suits Exclusion

Evanston also asserts that it did not have a duty to defend and does not have a duty to indemnify Moriarty because the claims against Moriarty are excluded under the “Cross-suits” provision of the policy. The “Cross-suits” provision states: “It is agreed that this insurance does not apply to any liability of one insured for ‘bodily injury’ or ‘property damage’ to the property or person of another insured.” Whether this exclusion applies to additional insureds, like Moriarty, that are added to the existing policy under the Endorsement, is unclear, particularly where operation of the exclusion will exclude claims against Moriarty by Steams’ and Accord’s employees, like Parker. In another exclusion contained in the policy, namely the breach of contract exclusion, the parties unambiguously expressed their intention by stating that the exclusion “also applies to any additional insureds under this policy.” The cross-suits provision does not contain any such language.
The policy defines the word “insured” as meaning “any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).” Under “SECTION II - WHO IS AN INSURED,” as appearing in the existing policy before the Endorsement, Named Insureds (those appearing in the Declarations) are first identified as insureds and then, numerous persons and entities with relationships to the Named Insured are identified as insureds. The terms “you” and “your,” referring to the Named Insured, are used to identify these other insureds. For example, the provision of Section II relevant here provides: “Each of the following is also an insured: a. ‘Your’ employees ... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.” As discussed above, the Endorsement amends Section II to add Moriarty as an insured for the limited claims specified in the Endorsement.
Interpreting the term “one insured” in the cross-suits exclusion to refer to Moriarty, the insured seeking coverage, and the term “another insured" to mean Parker, as an employee of a Named Insured, would exclude coverage for Parker’s claims. Such an interpretation appears to conflict with the terms of the Endorsement identifying the claims for which coverage was intended to be provided to Moriarty. As evi *24 denced by the terms of the Endorsement, Moriarty was added as an additional insured to insure it against claims, losses and liabilities arising out of the work performed by or for Stearns, including work performed by Steams’ and Accord’s employees. Claims by employees of Steams or Accord for bodily injury would qualify under the language of the Endorsement. The Endorsement’s Schedule identified Moriarty as an additional insured by reference to the “WRITTEN CONTRACT” which obviously referred to the subcontract/purchase order between Steams and Evanston that incorporated the terms and provisions of the subcontract between Moriarty and Evanston. The terms of these subcontracts show that inclusion of coverage for such claims was at a minimum the intention and expectation of Moriarty, the insured seeking coverage. The indemnity provisions of both subcontracts reference claims by employees by specifying that the obligation thereunder shall not be limited by the provisions of any workers’ compensation act; the insurance provisions of the subcontracts require Stearns to obtain workers’ compensation insurance. Given the language of the policy and these subcontracts, Moriarty would reasonably have expected the insurance to cover claims by Stearns or Accord’s employees, but not its own employees.
The “Separation of Insured’s” clause in the policy makes the language of the “cross-suits” exclusion even more ambiguous.[3] Interpreting the term “another insured” in the cross-suits provision as applying to Parker so as to limit claims against Moriarty, the insured seeking coverage, defeats the meaning of the “Separation of Insured’s” provision in the policy. The “Separation of Insured’s” provision states: “Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies; a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or ‘suit’ is brought.” This clause requires that each insured be treated as having a separate insurance policy. Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 244 (1986); Lumberman's Mut. Cas. Co. v. Hanover Ins. Co., 38 Mass.App.Ct. 53, 55 (1995). “Separation of insured’s” clauses, also termed “sever-ability of interests” clauses, have been interpreted to limit the meaning of the term “insured” in an exclusion clause to the party actually seeking coverage. See Desrosiers v. Royal Ins. Co. of America, 393 Mass. 37, 40-47 (1984); Ratner v. Canadian Universal Ins. Co., 359 Mass. 375, 380-81 (1971); Lumberman’s, 38 Mass.App.Ct. at 55-61. The “Separation of Insured’s” provision in the Evanston policy similarly operates to limit the interpretation of “insured” in the cross-suits provision. Because employees of a Named Insured are defined as insureds only by relation to the Named Insured, under the cross-suits exclusion, liability for injury to such employees should be excluded only as to the Named Insured who employed them. Where an additional insured, like Moriarty, is seeking coverage for liability for personal injury, the “Separation of Insured’s" provision dictates that the term “another insured” in the cross-suits provision be interpreted so as not to include employees of a Named Insured. To interpret the cross-suits provision otherwise would render the “Separation of Insured’s” provision meaningless. Where the policy is ambiguous, doubts regarding the meaning of any ambiguous words or provisions must be resolved against the insurer and an insured in entitled to the most favorable interpretation of the policy language. Cody, 387 Mass. at 146; Dilbert, 63 Mass.App.Ct. at 335. Moreover, exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. Vappi & Co., 348 Mass. at 431-32; Macarthur, 343 Mass. at 673. Accordingly, Parker’s claims against Moriarty are not excluded from coverage under the cross-suits provision.
For the foregoing reasons, the Court rules that, as a matter of law, Evanston had a duty to defend Moriarty against Parker’s claims and breached its duty. The question of damages resulting from the breach involves material issues of fact, and summary judgment is not appropriate on this issue. The court also finds that Evanston’s obligation to indemnify Moriarty for the settlement with Parker requires a determination that Moriarty’s liability for Parker’s claims are solely the responsibility of Steams and thus depends uppn the outcome of the trial on the third-party indemnification claim.

ORDER

Accordingly, Evanston Insurance Company’s Motion for Summary Judgment is DENIED and John Moriarty & Associates, Inc.’s Cross-Motion for Summary Judgment Against Evanston Insurance Company is ALLOWED in part and DENIED in part. John Moriarty & Associates, Inc.’s Motion for Partial Summary Judgment against James F. Stearns Co. is DENIED and James F. Stearns Co., Inc.’s Cross-Motion for Partial Summary Judgment against John Moriarty & Associates, Inc. is DENIED.

The negligence of Moriarty is a factual question that will be determined at trial on Moriarty’s indemnity claim against Stearns.

“Your work” is defined in the policy to mean “Work or operations performed by you or on your behalf.” The policy further states that the terms ‘you” and “your” refer to the Named Insured in the Declarations.

Nile decisions from other jurisdictions, upon which Ev-anston relies for its argument that the cross-suits exclusion applies to exclude the claims against Moriarty, involved policies that did not include a “separation of insured’s” or “severability of interests” provision. See BP Chemicals, Inc. v. First State Ins. Co., 226 F.3d 420 (6th Cir. 2000); Underwriters at Lloyds London v. STD Enterprises, Inc., 395 F.Sup.2d 1142 (D.Fla. 2005); Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, 2006 WL 1823562 (M.D.Fla. 2006).