Fabricant, Judith, J.
INTRODUCTION
This action alleges breach by defendant Travelers Property Casualty Company of America (Travelers) of its obligation under a general commercial liability insurance policy to defend plaintiff Harvard Pilgrim Healthcare, Inc. (HPHC) against claims brought against it by certain compounding pharmacies. Before the Court is HPHC’s motion for judgment on the pleadings on count I of its complaint. For the reasons that will be explained, the Court will allow the motion.
BACKGROUND
The commercial general liability policy in issue here was in effect from October 1, 2012, to October 1, 2013. The policy covers defense and indemniflcation for “personal and advertising injuiy.” It defines “personal injuiy” to include injuiy caused by “[o]ral or written publication . . . that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services . . .” The policy excludes coverage for injury “arising out of a breach of contract,”[1] or “arising out of providing or failing to provide ‘professional managed care services.’ ”[2] The policy defines “professional managed care services” to “include” eight specified functions, among which was “determination of any benefits payable to any participant of a health care insurance plan,” and “management services you contractually agree to provide to others with respect to any of the above services.”
In July 2013, Birds Hill Pharmacy, Inc., and two other pharmacies sued HPHC in Norfolk Superior Court, Civil Action No. 2013-0108. The pharmacies’ amended complaint, filed on August 7, 2013, describes itself in an introductoiy paragraph as follows;
This is an action by three independent pharmacies to redress the Defendant’s denial of coverage for medically necessary health care services, in violation of Massachusetts statutoiy law and also con-traiy to the Defendant’s contractual obligations. In addition, Plaintiffs seek damages in connection with Defendant’s intentional interference with their advantageous business relationships and defamatory statements made by Defendants regarding Plaintiffs, the safely of compounded medications they create, and the practices Plaintiffs employ to manufacture compounded pharmaceuticals.
The pharmacies’ complaint goes on to allege that HPHC, as a licensed health maintenance organization, is required by statute, by its own published guidelines, and by its contracts with its insureds and with third-party intermediaries, to provide coverage for medically necessary compounded medications. On May 31, 2013, the pharmacies’ complaint alleges, HPHC announced that it would no longer provide coverage for compounded medications for adult patients.[3] That announced policy, the pharmacies’ complaint alleges, is contraiy to the medically necessary needs of adults presently covered by HPHC," and, despite the announced safety rationale, is “contraiy to safety concerns.”
The pharmacies’ complaint further alleges that HPHC’s announcement, and “subsequent similar announcements to its employer and employee subscribers,” as well as statements to media outlets, “contain materially false statements regarding the safety of compounding medications and the processes employed by compounding pharmacists, including Plaintiffs, to prepare compounded pharmaceuticals.”[4] Those falsehoods, the complaint alleges, “injured Plaintiffs professional reputations,” and “have an adverse effect on Plaintiffs’ business and their reputation in the community.” Based on these allegations, the pharmacies assert four counts: breach of contract based on a third-party beneficiary theoiy (count I); violation of G.L.c. 93A (count II); defamation (count III); and intentional interference with advantageous business relations (count IV). The pharmacies’ complaint seeks injunctive relief and damages.
HPHC forwarded the pharmacies’ complaint to Travelers, seeking defense and indemnification. Travelers denied coverage, citing the exclusions set forth supra. HPHC then brought this action on April 7, 2014, alleging that Travelers has breached its contractual obligations (count I) and has also violated G.L.c. 93A by its denial of coverage and by delay in providing its coverage determination (count II). HPHC’s present motion addresses count I, which claims breach of the duty to defend.
DISCUSSION
The interpretation of an insurance policy is a question of law for the court. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Where the terms *386 of the policy are unambiguous, the question of interpretation is appropriate for summary judgment. See Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006), citing Cody. Where the provisions of an insurance policy are plainly expressed, the policy must be enforced in accordance with its terms, Cody, 387 Mass. at 146, and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered. McGregor v. Allamerica Ins. Co., 449 Mass. 400, 402 (2007); City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 642-43 (2006). If, however, “the contract is ambiguous, ’’doubts as to the meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243 (1959). “A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” County of Barnstable v. American Fin. Corp., 51 Mass.App.Ct. 213, 215 (2001). An ambiguity is not created merely because there is a controversy between the parties as to the interpretation of the policy provisions. See Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
The basic rule regarding an insurer’s duty to defend under a contract of liability insurance is set forth in Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). The Appeals Court said there:
[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are “reasonably susceptible” of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense . . . [T]he process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.
(Citations omitted). HDH Corp. v. Atlantic Charter Ins. Co., 425 Mass. 433, 436 (1997); SCA Serv., Inc. v. Transportation Ins. Co., 419 Mass. 528, 531-32 (1995); Liberty Mut. Ins. Co. v. SCA Serv., Inc., 412 Mass. 330, 331-32 (1992); Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984); Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass.App.Ct. 239, 240 (1993).
Thus, the duty to defend depends not on the actual facts of the event giving rise to the claimed liability, but on the full range of possible facts that could fall within the scope of the third party’s complaint. Where a complaint is so general as to encompass a wide range of possible scenarios, the “possibility that the liability claim falls within the insurance coverage” is enough to trigger the duty to defend. Sterilite, 17 Mass.App.Ct. at 319. Only where “the allegations of [the] complaint describe with precision events which ’’the insurance policy expressly excludes from coverage" is the insurer free to refuse a defense. Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983). See HDH Corp., 425 Mass. at 437 (no duty to defend where “complaint did not state a claim that could result in liability which [the insurer] would be obligated to pay under any reasonable interpretation of the policy).
Even if the complaint does not appear to fall within the policy, the insurer may have a duty to defend if additional facts, known or available to it, indicate that the claim is covered. E.g., Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10-11 (1989) (insurer required to defend under defamation liability policy where complaint on its face alleged only breach of contract, but additional facts known to insurer indicated plaintiff alleged harm to reputation). “[A] liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity.” Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368-69 (1996), citing Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. at 332.
If a duty to defend is established with respect to part but not all of a complaint, such as one claim in a multi-count complaint, or one type of damage alleged but not others, the insurer has a duty to defend the entire action. GMAC Mortg., LLC v. First. Am. Title Ins. Co., 464 Mass. 733, 738 (2013); Aetna Cas. & Sur. Co. v. Continental Cas. Co., 413 Mass. 730, 732, n.1 (1992); Sterilite, 17 Mass.App.Ct. at 318 (test is whether “any such loss” falls within policy). Thus, once it is determined that some part of a claim against an insured presents potential coverage, coverage as to the remainder of the claim is immaterial to the duty to defend.
Here, the complaint includes a claim for defamation, which falls directly within the policy’s definition of covered personal injury. Thus, Travelers has a duty to defend the entire complaint unless an exclusion bars coverage for all of the claims pled. Exclusionary clauses are strictly construed against the insurer. Liquor Liab. Jt. Underwriting Ass’n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 322 (1995); Hingham Mut. Fire Ins. Co. v. Mercurio, 71 Mass.App.Ct. 21, 24 (2008).
1. The Contract Exclusion
The first exclusion Travelers cites bars coverage for claims “arising out of a breach of contract.” The pharmacies’ complaint does indeed claim breach of contract, on a theory that the pharmacies are third-party beneficiaries of the contracts between HPHC and its insureds and intermediaries. But the assertion of a contract claim does not, in and of itself, establish that the defamation claim arises out of the alleged breach of contract. That question depends on the meaning of “arising out of,” and on the relationship *387 between the alleged defamation and the alleged breach of contract. See Andover-Newton Theological Sch., Inc. v. Continental Cas. Co., 930 F.2d 89, 94 (1st Cir. 1991) (exclusion for “any amounts due, under the terms of any contractual obligation” did not bar coverage for claim of breach of Age Discrimination iri Employment Act, even though same facts would constitute breach of employment contract).[5]
‘The phrase ‘arising out of must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law . . . Indeed, cases interpreting the phrase . . . suggest a causation more analogous to ‘but for’ causation, in which the court. .. inquires whether there would have been personal injuries, and a basis for the plaintiffs suit, in the absence of the underlying conduct.” Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999) (internal citations omitted) (exclusion for “any claim which arises wholly or in part out of allegations of violation of any . . . law” barred claim that motel’s negligence rendered it liable for damages to patron for rape by fellow patron). “The usual meaning ascribed to the phrase ‘arising out of’ is much broader than ‘caused by’; the former phrase is considered synonymous with ‘originate’ or ‘coming into being.’ “ New Eng. Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass.App.Ct. 722, 724 (1996) (exclusion for injury ’’arising out of. . . discrimination which is unlawful" bars coverage for claims on common-law theories based on discriminatoiy treatment of employee), citing Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978) (exclusion for claims “arising out of’ ownership, operation, or use of a motor vehicle bars claim of negligent entrustment of vehicle).[6]
Here, the defamation claim arises from HPHC’s statements made in the context of announcing and later explaining its decision to cease paying for compounded drugs for adult patients. The pharmacies allege that the decision breached HPHC’s contractual obligations to them, for which HPHC is liable to them under the contracts. Clearly, HPHC will have no coverage under the Traveler’s policy for any such liability. But that does not resolve the question of coverage for the defamation claim.
The decision that is alleged to have breached contracts was the occasion for the allegedly defamatory statements, and likely the motivation for them. But the statements are distinct from the decision itself; they did not depend on the decision, nor did the decision depend on the statements. HPHC could have made and announced the same decision without making any comment about the safety, efficacy, or cost-efficiency of the pharmacies’ products. Similarly, it could have made the same comments without reference to any decision or policy announcement regarding coverage for those products, and might have had reason to do so in an effort to influence regulators, patients or prescribing clinicians. The allegations of the pharmacies’ amended complaint thus do not establish that no injury to the pharmacies’ reputations would have occurred without the alleged breach of contract. Compare New Eng. Mut Life Ins. Co., 40 Mass.App.Ct. at 727 (“Without the underlying discriminatory acts . . . there would have been no personal injuries”). The Court concludes, therefore, that the exclusion for claims arising from breach of contract does not bar coverage for the defamation claim.
2. The Professional Managed Care Services Exclusion
The same analysis effectively resolves the dispute regarding the Professional Managed Care Services Exclusion. Travelers contends that the defamation claim arises out of HPHC’s “determination of any benefits payable to any participant of a health care insurance plan,” an activity explicitly included in the definition of professional managed care services. The allegations of the complaint leave no doubt that the alleged defamation occurred in the course of HPHC’s announcement of and explanation for its decision regarding benefits to be paid to or on behalf of certain plan participants. The decision itself clearly fell within the exclusion, but it does not necessarily follow that the alleged defamatory statements regarding the reasons for that decision arose out of the decision. Here again, the statements are distinct from the decision itself; they did not depend on the decision, nor did the decision depend on the statements. HPHC could have made and announced the same decision without making any evaluative comment about the pharmacies’ products. Similarly, it could have made the same comments about compounded drugs without reference to any decision or policy regarding payment for those products. See generally, Roe v. Federal Ins. Co., 412 Mass. 43, 49-50 (1992) (dentist’s sexual assault of patient did not “arise out of rendering . . . professional services” for purposes of insurance coverage). The court concludes, therefore, that the exclusion for professional managed care services does not bar coverage. Because neither of the cited policy exclusions applies, it follows that Travelers’ refusal to defend the underlying suit is a breach of its obligations under the policy, and HPHC is entitled to judgment for that breach on count I of its complaint.
CONCLUSION AND ORDER
For the reasons stated, Plaintiffs Motion for Judgment on the Pleadings on Count I is ALLOWED.

 This exclusion appears as Section 1, Coverage B(2)(f).

 this exclusion appears in an endorsement captioned “Exclusion — Professional Managed Care Services.”

 Appended to the pharmacies’ complaint is a copy of HPHC’s letter, dated May 31, 2013, sent to one of the pharmacies. The letter announces that “as of August 7, 2013, Harvard Pilgrim’s prescription drug benefit will no longer cover compounded drugs for members age 18 and older.” It goes on to explain that “Harvard Pilgrim is making this change for safety and cost reasons. The volume and cost of prescriptions for adult compounded drugs has skyrocketed . . . *388 Claims research revealed that much of this increase in volume is attributable to uses that should not be covered . . . Finally, compounded drug products are not FDA-approved. There is a lack of good quality scientific evidence of effectiveness or safety for specific ingredient combinations and/or modes of administration. Our research showed that in most cases, there were less costly FDA-approved formulary medications or over-the-counter products available at substantially less cost.” The letter goes on to describe a procedure for “exception requests,” and advises that “Harvard Pilgrim is notifying the 4,200 members age 18 and over who have filled a compounded medication in the last six months.” Also appended to the pharmacies’ complaint are copies of similar letters sent to “Employer Partners.”

 Appended to the complaint is a copy of an article in the Boston Globe, on June 13, 2013. The article quotes the letter, and connects HPHC’s action to “last year’s deadly fungal meningitis outbreak linked to a Massachusetts compounding pharmacy.” The article attributes to HPHC’s chief medical officer the statements that “the insurer’s new policy stems from its safety review after the meningitis outbreak,” that “this is not about denying care . . . [i]t’s about eliminating costs that don’t add value,” and that some compounders try to “take advantage of loopholes” in an area that is “poorly regulated.”

 As Travelers points out, the language of the policy exclusion in Andover-Newton is not the same as the exclusion cited here. The holding of the case is pertinent nonetheless: where a single set of facts supports multiple legal claims, a policy exclusion that bars one such claim does not necessarily bar another. It bears noting, moreover, that despite the variation in language, the Court in Andover-Newton treated the exclusion as if it employed the “arising out of language present here. Id. (“the liability for payment of ADEA damages did not ‘arise! ] by virtue of the contractual obligation.’ It arose by virtue of a violation of federal law . . .”), distinguishing Nat’l Union Fire Ins., Inc. v. Hospital Affiliates Management Corp., 363 N.W.2d 494, 496 (Minn.Ct.App. 1985).

 Travelers cites two federal district court decisions that apply the principles set forth in these authorities to hold tort claims barred based on contract exclusions, where the conduct alleged occurred in the context of, and could not have occurred without, contractual relationships. Radianse, Inc. v. Twin City Fire Ins. Co., 2010 U.S. Dist. LEXIS 106778 (D.Mass. 2010); GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co., 520 F.Sup. 213, 228 (D.Mass. 2007). These decisions, like the decisions from other jurisdictions that HPHC cites, have no precedential value, but provide examples of application of Massachusetts appellate precedent to particular factual circumstances.